467 So.2d 902 (1985)
Jay Bee CUNNINGHAM,
v.
STATE of Mississippi.
No. 55400.
Supreme Court of Mississippi.
February 27, 1985.
Rehearing Denied May 15, 1985.
*903 James G. Tucker, III, Cook & Tucker, Bay St. Louis, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., SULLIVAN and ANDERSON, JJ., and SUGG, Retired Justice.
SUGG, Retired Justice, for the Court:[1]
Appellant was convicted in the Circuit Court of Hancock County, Honorable James Thomas presiding, for the crime of forcible rape. The jury fixed his punishment at life imprisonment and appellant was sentenced to life imprisonment. Appellant assigns as error the admission of hearsay testimony, the refusal of a defense instruction, and that the statutory scheme permitting life sentence for the crime of rape is unconstitutional.
The prosecutrix was traveling from her home in Louisiana to Biloxi to attend her sister's wedding. About 9 p.m. she had a flat tire on I-10 at milepost 11 inside the State of Mississippi. Prosecutrix was unable to change the tire because the lug nuts were rusted. She entered her automobile, locked all the doors, and rolled up all the windows, except the window on the driver's side. She went to sleep and awoke when appellant was standing outside her car with a knife in his hand. Appellant pulled her from the car and told her to get in the back seat and remove her pants. She refused, but was forced at knife point to enter the car and remove her clothes. Appellant raped her and after the rape, took her jewelry, watch, and $88, several cans of motor oil from the trunk of her car, the battery from the engine compartment of her car and siphoned some gas from her car, a 1964 Dodge, and put the gasoline into his car, a 1974 Thunderbird.
Appellant forced the victim into his car and drove away with her in his car holding a knife to her neck. While they were driving, he drank wine at intervals. Shortly thereafter, appellant had a flat tire on his car. He ordered the prosecutrix into the back seat and raped her again at knifepoint. Shortly thereafter a truck stopped to render assistance and appellant instructed her that he was going to tell the driver of the truck that she was his wife and pregnant and not to contradict him. The flat tire from appellant's car was placed in *904 the back of the truck and the truck driver proceeded with the prosecutrix sitting between him and the appellant. At this time, appellant held the knife behind her back, but later put the knife in his pants, warning her he had easy access to the knife and not to say anything to the truck driver.
The prosecutrix tried to alert the driver that something was out of the ordinary, but was unable to get his attention. The truck driver stopped to consult a roadmap and the prosecutrix noted that the appellant was asleep. She jumped out of the truck on the driver's side, following the truck driver, and told him about the situation. The truck driver walked with her to the back of the truck stating that he would get help and they proceeded to walk toward a telephone. About that time a police car approached and stopped. The truck driver told the officers of the situation, the prosecutrix was placed in the officer's vehicle and the officers arrested appellant.
Dennis Langford, a patrolman for the Jackson County Sheriff's Department, testified that he was one of the officers who stopped to render assistance to the truck driver. He testified in part, "and she notified us that the black male was in the truck with a weapon, she had been raped by him, and he was holding her hostage, and all." This testimony is the subject of the first assignment of error.
The officer testified that he arrested appellant and found a knife stuck in the back of his pants in the middle of his back. He also testified that they removed three ladies' rings, a ladies' watch, and $25 in cash from appellant.
The testimony of the prosecutrix was corroborated by physical evidence in several instances. She testified that when she was raped the second time on the back seat of appellant's automobile, he forced her to pull off her bra and panty girdle and when she dressed after the rape, the bra and panty girdle were left in appellant's automobile. An officer found the bra and girdle in appellant's automobile and these articles of clothing were identified by the prosecutrix at the trial.
The prosecutrix testified that after appellant raped her the first time on the back seat of her car, he removed the console and keys to her car and threw them down the embankment. An officer testified he recovered the keys and the console at the place prosecutrix had testified the appellant had thrown them.
The prosecutrix also testified that after appellant raped her the first time, he wiped his male organ with a blue shirt. The officer who found the keys testified he also found a blue shirt on the floorboard of prosecutrix' car. Joe E. Andrews, a forensic scientist, specializing in the area of hair and fiber identification, testified he examined the blue shirt and found on the shirt pubic hairs of Negroid origin which exhibited the same microscopic characteristics as the known pubic hairs of appellant. He also found one pubic hair of Caucasian origin, which exhibited the same microscopic characteristics of the known pubic hairs of the prosecutrix.
This witness also testified that in the pubic combing sample of the prosecutrix, he found hairs of Negroid origin which exhibited the same microscopic characteristics as the known pubic hairs of appellant.
The prosecutrix testified that the appellant took the battery from her automobile and placed it in the trunk of his car. An officer testified he found the prosecutrix' battery in the trunk of appellant's automobile.
Johnette Gothard, a forensic scientist specializing in the field of forensic serology, testified that she examined the sexual assault kit of the prosecutrix and also the blue shirt. The test for phosphatase was positive on both the sexual assault kit and the blue shirt, indicating the presence of acid phosphatase. This showed the presence of male semen in the prosecutrix and on the blue shirt.
The prosecutrix testified the appellant took from her $88, consisting of four $20's, one $5 and three $1's. The jailor testified that when he searched appellant at the jail, he found three $20 and three $1 bills in a *905 double pair of socks appellant was wearing. The officer that arrested appellant testified that he removed $25 from the appellant. These sums add up to the $88, which prosecutrix testified appellant took from her.
After the state rested the court overruled appellant's motion for a directed verdict. The attorney for appellant then stated that his client did not intend to offer any testimony. Out of the presence of the jury, the court then advised appellant that he had a right to testify, that this was a personal decision to be made by him, that if he decided to testify it would be under oath, and he would be subject to cross examination by the state. Appellant told the court that he did not intend to testify, stating, "I am not going to get on the stand." Appellant said he had talked to his attorney about this matter and stated that he did not want to testify.
The first assignment of error is based upon the testimony of Patrolman Dennis Langford. This officer was told by prosecutrix almost immediately after she escaped from the presence of appellant that the black male who had raped her was in the truck with a weapon and he was holding her hostage. Appellant cites Anderson v. State, 82 Miss. 784, 788, 35 So. 202, 203 (1903), in which the Court stated.
Ordinarily, any and all statements made by a party assaulted after the commission of the crime is hearsay and not admissible, an exception is made in the case of rape alone, but even in that case, no statements made by the prosecutrix are admissible except her complaint that she had been ravished. The details of the transaction, the name of the party accused, the place where it is said to have occurred, the time of the alleged offense, cannot be proven by a repetition of the words of the prosecutrix. The exception in cases of rape is made upon the idea that outraged virtue will proclaim her wrong, and therefore silence may be considered as raising a suspicion of consent.
This rule has been modified in subsequent cases. It was first modified in Lauderdale v. State, 227 Miss. 113, 85 So.2d 822 (1956) to permit witnesses to testify what a prosecutrix told them about the time and the place of the rape.
The rule in Anderson was further modified in Williams v. State, 427 So.2d 100 (Miss. 1983), where the Court was considering a case involving the rape of an eleven-year-old child. After stating the general rule set forth in Anderson, supra, the Court adopted the language of a Michigan Court of Appeals as follows:
Hearsay testimony concerning the details of a complaint of sexual assault is admissible where the complaintant is of "tender years and if her statement is shown to have been spontaneous and without indication of manufacture, and if any delay in making the complaint is excusable insofar as it is caused by fear or other equally effective circumstances. People v. Mikula, 84 Mich. App. 108, 116, 269 N.W.2d 195, 199 (1978). (Emphasis added).
In Oates v. State, 437 So.2d 441 (Miss. 1983), two officers testified about the facts related to them by the prosecutrix. The facts testified to by the officers consisted of a statement of what had happened and a description of the attacker. It was contended on appeal that the testimony of the two officers prejudicially bolstered the testimony of the prosecutrix. The court held that such testimony as related by the prosecutrix in a rape case is technically hearsay but in certain instances it is admissible.
In the case before the court, the prosecutrix did not give a description of the attacker, but stated that he was in the truck which was a short distance away from the prosecutrix and the officers. We perceive no difference in giving a description of the attacker and stating the name of the attacker.
In Williams v. State, we adopted the rule in cases where the prosecutrix is under the age of twelve years that her statement is admissible if it is shown to have been spontaneous and without indication of manufacture. In this case, although the prosecutrix was an adult, the statement *906 was spontaneously made at the first opportunity she had to complain to a law enforcement officer and there is no indication that her accusation was manufactured.
We are of the opinion that the rule in Anderson should be modified so that when a prosecutrix states the name of her attacker, and the statement appears to be spontaneous and without indication of manufacture, it should be received in evidence as an exception to the hearsay rule. We therefore modify the opinion in the Anderson case accordingly.
In his second assignment of error appellant contends that the trial court erred when it refused instruction D-4 requested by him. This instruction would have told the jury that in order for the state to meet the burden of proving defendant guilty beyond a reasonable doubt, the state must prove every essential element of the offense charged and the jury must be convinced of each and every essential element beyond a reasonable doubt before they could convict the defendant.
The trial judge, in instruction C-13, instructed the jury that the law presumes every person charged with the commission of a crime to be innocent. The instruction went on to state that this presumption placed upon the state the burden of proving him guilty of every material element of the crime with which he was charged and before the jury could return a verdict of guilty, the state must prove that the defendant was guilty beyond a reasonable doubt.
Furthermore, instruction S-1 for the state set forth the material elements constituting the crime of forcible rape and instructed the jury that if it believed from the evidence beyond a reasonable doubt that the state had met its burden, then the defendant was guilty and it was the sworn duty of the jury to say so by its verdict.
It is well established that the trial court is not required to grant several instructions on the same question in different verbiage. Davis v. State, 431 So.2d 468 (Miss. 1983); McWilliams v. State, 338 So.2d 804 (Miss. 1976).
We hold that this assignment of error is not well taken because the jury was properly instructed as to the burden of proof.
In his third assignment of error, appellant contends that the statutory provision allowing a life sentence for the crime of rape is unconstitutional.
Our forcible rape statute [MCA § 97-3-65 (2) (1977 Supp.).] provides that:
Every person who shall forcibly ravish any female of the age of twelve years or upward ... upon conviction shall be imprisoned for life in the state penitentiary, if the jury by its verdict so provides...
In his argument appellant relies solely on United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). This case held that the federal kidnapping act should not be invalidated because its capital punishment clause violated the Fifth and Sixth Amendments, but only the death penalty of the statute should be declared unconstitutional. The Mississippi forcible rape statute does not permit infliction of the death penalty. It merely provides that a defendant may be sentenced to life imprisonment if the jury by its verdict so prescribes. If the jury fails to fix the penalty at life imprisonment, the Court shall fix a penalty of imprisonment for any term as the court, in its discretion, may determine.
In Lee v. State, 322 So.2d 751 (Miss. 1975), this Court held that a defendant convicted of forcible rape under MCA § 97-3-65 could not be sentenced to life imprisonment unless the jury fixed the penalty at life imprisonment and in cases where the jury failed to fix the penalty of life imprisonment, the judge must sentence the defendant to a definite term reasonably expected to be less than life.
In our opinion appellant's argument does not rise to constitutional proportions and Jackson, supra, has no application because our forcible rape statute no longer contains a death penalty provision. We recognize that a defendant who enters a plea of not *907 guilty and demands a trial by jury, can, upon conviction, be sentenced to life imprisonment if that be fixed by the jury. If on the other hand, he enters a plea of guilty, he is assured he will not suffer imprisonment for life. At best, the statute subjects a defendant who seeks a jury trial to the increased hazard of a few more years of imprisonment as opposed to the increased hazard of death. While this is a risk defendant must take in determining whether or not to enter a plea of guilty, it is a constitutionally permissible risk. We perceive no constitutional infirmity in the sentencing provision of the statute.
The testimony of the prosecutrix was corroborated by physical evidence and appellant did not offer any evidence to the contrary. The evidence supported the jury verdict. Even if we were to hold the testimony of Langford was inadmissible hearsay, under Mississippi Supreme Court Rule 11, we would affirm because the proof is so overwhelming, the judgment would not result in a miscarriage of justice.
AFFIRMED.
PATTERSON, C.J., WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] Sitting pursuant to MCA § 9-3-6 (Supp. 1984), this opinion is adopted as the opinion of the Court.