560 So.2d 163 (1990)
Billy HOSFORD
v.
STATE of Mississippi.
No. 07-KA-58055.
Supreme Court of Mississippi.
March 21, 1990.
Rehearing Denied May 23, 1990.
*164 Fielding L. Wright, Jr., Pascagoula, for appellant.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice Jan. 3, 1989, Mike C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, PRATHER and ANDERSON, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Billy Hosford was indicted, tried and convicted in the Circuit Court of Greene County, Mississippi, on a charge of sexual battery and sentenced to a term of thirty (30) years in the custody of the Mississippi Department of Corrections. He has appealed here and assigns three (3) errors in the trial below.
The victim in this case is a female child, who was eight (8) years of age at the time of the crime. On January 13, 1985, the sister of the victim was admitted to Greene County Hospital for treatment of tonsillitis. Her mother stayed at the hospital with the child that night. Other members of the family who were left in the home with the victim during the night were three children, girls, ages 10 and 6, and a boy, age 7 and appellant, the children's stepfather. While the victim was sleeping in her bunk bed, appellant entered her room, nude, awakened her and "put his thing" between her legs and then into her mouth, where he kept it until "stuff came out." The victim testified that by "his thing" she meant "private part."

I.

THE LOWER COURT ERRED IN REFUSING TO GRANT A MISTRIAL WHEN EVIDENCE OF OTHER CRIMES AND VIOLATION OF OTHER COURT ORDERS WERE ADDUCED OVER THE OBJECTIONS OF THE APPELLANT.
The victim was called as the first witness for the State. After she testified to facts related hereinbefore, the prosecutor asked her the following question:
Q. Has Billy ever done this to you before, 
A. (The victim nodded "Yes")
At this point, without making an objection or asking that the jury be admonished to disregard the question and answer, appellant's counsel requested a mistrial. It was denied and the trial proceeded.
Appellant based his motion for mistrial solely on the issue of past crimes. Now he also contends that the crimes were vague and remote. In Sims v. State, 512 So.2d 1256 (Miss. 1987), the Court said:
[T]his Court's longstanding rule must again be reiterated, that when an objection is made at trial on one ground and on another ground on appeal, we will not accept such untimely argument as a ground for reversal. [citations omitted] ... An objection to evidence may not be made upon one ground in the lower court and be presented upon an entirely different theory in this Court.
Sims v. State, 512 So.2d at 1258. This Court has held in similar cases of sexual battery involving small children that admission *165 of evidence of "substantially similar prior sexual acts with the same person" are properly admitted. Coates v. State, 495 So.2d 464, 468 (Miss. 1986); Hicks v. State, 441 So.2d 1359, 1360-61 (Miss. 1983); Speagle v. State, 390 So.2d 990, 993 (Miss. 1980); Davis v. State, 367 So.2d 445, 446 (Miss. 1979).
Counsel for appellant called appellant's wife, the mother of the victim, who testified that at the time of the alleged offense, the family had no bunk beds. This was contradictory to the victim's testimony. On cross-examination, the prosecutor asked her when the bunk beds were acquired. She replied that the beds were acquired in August of 1985. The following questions were then asked:
Q. Who bought them and installed them, put them up?
A. Who bought them and installed them; Billy.
Q. Billy Hosford?
A. My husband.
* * * * * *
Q. About a year ago, after Billy had been ordered not to see these children?
BY MR. HAMILTON: Your Honor, I'm going to object. This is hearsay.
BY THE COURT: Overruled. Go ahead.
BY MR. HARKEY:
Q. Do you know Billy was ordered not to see those kids?
A. That's right.
Q. So he got the bunk beds and installed them at a time that he wasn't supposed to be there in the home at all?
A. No, he did not. He never came to the home when he was ordered not to come.
BY MR. HAMILTON: Your Honor, what has all this got to do with anything?
BY MR. HARKEY: I'm testing her credibility, Judge, her story.
BY THE COURT: Go ahead... .
Appellant contends that admission of the testimony about a court order deprived him of a fair and impartial trial. However, the questions by the prosecutor were for the purpose of discrediting the witness and to show that the bunk beds were in the house at the time of the crime; that, according to Mrs. Hosford's admission, appellant had not violated the court order forbidding him to come to the family home; that, if he couldn't have come to the home, he couldn't have installed the bunk beds in August of 1985; and that the beds would have had to have been in the home at the time of the sexual battery in January of 1985. This Court has held that where facts are susceptible of two interpretations they constitute a fair target for the State's cross-examination. Hines v. State, 472 So.2d 386, 391 (Miss. 1985); see also Shanklin v. State, 290 So.2d 625 (Miss. 1974), where this Court said:
"Whether a question put on cross-examination calls for collateral fact, or whether it is within the scope of the direct examination is always for the court to determine. The court's discretion, where properly exercised, will not be interfered with on appeal."
Id. at 628.
Mrs. Hosford testified that she did not believe the incident related by the victim.
The assigned Error I is rejected.

II.

THE LOWER COURT ERRED IN ALLOWING THE STATE'S EXPERTWITNESS TO TESTIFY, OVER THE CONTINUOUS OBJECTIONS OF THE APPELLANT, AS TO HEARSAY AND AS TO SUCH MATTERS AS HER OPINIONS ON THE PROSECUTRIX'S TRUTHFULNESS, THEREBY IMPROPERLY BOLSTERING THE TESTIMONY OF THE PROSECUTING WITNESS AND DENYING THE APPELLANT'S RIGHT TO A FAIR TRIAL.
Appellant next contends that the testimony of Brenda Chance, a child therapist, contained inadmissible hearsay and further impermissibly bolstered the testimony of the victim. The prosecution characterizes the testimony of Brenda Chance as two-pronged, i.e., (1) that which recounted *166 things told to Chance by the victim, and (2) that which comprised Chance's expert opinion concerning the victim's behavior. The State argues that both forms of testimony were admissible. We address each category separately but first overview the fabric of the testimony given by therapist Chance.
Much of Chance's testimony involved a description of characteristics and traits common among sexually abused children. She indicated that the victim in this case exhibited the described characteristics and, in her opinion, had been sexually abused. She further testified that while the victim had likely been abused by more than one person, that appellant was the most threatening due to his family status as a primary provider. According to Chance, the victim saw herself as a maternal figure and protector of appellant due to the psychological damage she sustained from the abuse. Chance was specifically asked by the prosecutor if there were any possibility that the victim had confused appellant with any other individual who had abused her. Chance replied in the negative.
At issue in this part of Chance's testimony are two claims: (1) that her testimony concerning the veracity of the victim's complaint was impermissible "bolstering", and (2) that testimony regarding child abuse syndrome characteristics was improper expert testimony under the 700 series of the Mississippi Rules of Evidence.
With regard to the complaint of bolstering, appellant relies on House v. State, 445 So.2d 815 (Miss. 1984) for the proposition that when an expert witness testifies that he believes a prosecution witness is telling the truth, the testimony constitutes improper bolstering. In House, however, quite unlike the present case, the statements of the victim which were relied on by the expert were a product of a hypnotic trance. The Court in House was primarily concerned with whether the testimony stemming from hypnosis by the expert was proper expert opinion. In the present case, Chance's testimony was the direct product of her observations of the victim's display of varying emotions when speaking about each abuse and, moreover, was elicited in direct response to the defense assault on the credibility of the victim. Chance's testimony is excerpted below:
Q. What type of affectational response did [the child] have in regards to differentiating between what Billy Hosford did and what other individuals did to her? How did she differentiate between those?
A. All right. With the other offenders she appeared more angry, easier to express what the others had done to her. But when it came to talking about Billy Hosford, she was much more fearful and anxious; reluctant to tell me what happened. Primarily scared of what the repercussions would be when she divulged more and more details.
Q. Has she been consistent?
A. Yes, she has.
Q. In what Billy had done to her as opposed to what other individuals had done to her, has she been consistent in that regard?
A. Correct.
Q. Based upon your educational background and your counseling sessions with [the child], do you have an opinion as to the possibility that [the child] has confused Billy Hosford with other individuals who have victimized her?
* * * * * *
A. I don't think that she has confused what has happened, primarily because of what I have already said. The emotional response that she has toward each perpetrator is very specific; very, very specific. And that toward him is specific also.
Viewed out of context, the above-quoted testimony treads close to the brink of reversible error as a comment upon the truthfulness of the child's accusations. Had such statements been made wholly without reference to the impeachment of the victim on cross-examination, reversible error may well have occurred. In Williams v. State, 539 So.2d 1049, 1051 (Miss. 1989), the Court held such testimony "of dubious competency". *167 See also House, 445 So.2d 815, 821-23. We do not retreat from these cases but hold, under the particular circumstances of this case, that Chance's brief testimony, negating the defense position that the victim had confused appellant with other abusers, did not rise to the level of bolstering and is not reversible error.
Appellant also contends that the recounting of the victim's statements by Chance is impermissible hearsay. We need not reach the issue of hearsay exceptions for we find today that Chance's testimony was admissible as non-hearsay under Miss. R.Evid. 801(d)(1). The Mississippi Rules of Evidence allow for the limited rehabilitation of a witness' testimony once that testimony has been subject to impeachment by cross-examination. Rule 801 provides:
(d) Statements which are not Hearsay A statement is not hearsay if:
(1) Prior Statement By Witness The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition, or (B) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving him.
Miss.R.Evid. 801(d)(1). The Advisory Committee's Comment to Rule 801(d)(1)(C) refers to Fells v. State, 345 So.2d 618 (Miss. 1977), for the proposition that statements regarding an extra-judicial identification may be introduced as substantive evidence and that such testimony does not constitute impermissible "bolstering" of the witness. This principle is found in the following statement from the Fells opinion:
[I]f the principal witness' identification is impeached, then independent evidence of the identification may be introduced through third persons present at the out-of-court identification. We are persuaded to this view because such evidence not only has greater probative force and thus preserves the better evidence, but also because the witness testifying is in court and subject to cross-examination.
Fells v. State, 345 So.2d at 622. See also Stringer v. State, 548 So.2d 125, 132-33 (Miss. 1989).
Hearsay statements of a rape victim have long been considered admissible for the limited purpose of rebutting any inference of consent. However, "[t]he details of the transaction, the name of the party accused, the place where it is said to have occurred, the time of the alleged offense, cannot be proven by a repetition of the words of the prosecutrix." Anderson v. State, 82 Miss. 784, 788, 35 So. 202, 203 (1903). This rule was later modified so as to make admissible statements regarding the time and place of the rape, Lauderdale v. State, 227 Miss. 113, 85 So.2d 822 (1956), and a description of the attacker given to the police, Oates v. State, 437 So.2d 441, 442-43 (Miss. 1983); see also Cunningham v. State, 467 So.2d 902, 905-906 (Miss. 1985) (allowing hearsay statements regarding the location of the attacker). In Williams v. State, 427 So.2d 100 (Miss. 1983), a child sexual abuse case, this Court allowed the admission into evidence of the hearsay statements of the victim (including details of the crime), relying apparently upon the "tender years" doctrine. 427 So.2d at 102-03 (quoting People v. Mikula, 84 Mich. App. 108, 116, 269 N.W.2d 195, 199 (1978)). However, the "tender years" exception to the hearsay rule has been abrogated by the adoption of the rules. Mitchell v. State, 539 So.2d 1366, 1369 (Miss. 1989); Leatherwood v. State, 548 So.2d 389, 399 (Miss. 1989).
In child sex abuse cases, many courts have allowed corroborative testimony subsequent to impeachment of the victim's testimony at trial. Cases thus applying Rule 801(d)(1)(B) are numerous. Makinen v. State, 737 P.2d 345, 348-49 (Wyo. 1987). See also State v. Conroy, 131 Ariz. 528, 642 P.2d 873, 874 (Ariz. App. 1982); Bing v. State, 23 Ark. App. 19, 740 S.W.2d 156, 157 (1987); State v. Brotherton, 384 N.W.2d 375, 380 (Iowa 1986); State v. Vigil, 103 *168 N.M. 583, 711 P.2d 28, 32-33 (N.M.App. 1985); Dearing v. State, 100 Nev. 590, 691 P.2d 419, 421 (1984); State v. Middleton, 294 Or. 427, 657 P.2d 1215, 1217 (1983); Commonwealth v. Rounds, 510 Pa. 524, 510 A.2d 348, 349 (1986); State v. Roy, 140 Vt. 219, 436 A.2d 1090, 1093 (1981); State v. Petrich, 101 Wash.2d 566, 683 P.2d 173, 179-80 (1984).
Where, as here, the defense raises the claim of fabrication without alleging any particular impermissible motive or source of influence, courts have held that rebuttal testimony by third persons may be admitted to demonstrate the absence of influence or motive to fabricate. Craig v. State, 76 Md. App. 250, 544 A.2d 784 (1988).
In sum, the testimony of Chance, of which Hosford now complains, was admissible as evidence to rebut a charge of recent fabrication or confusion  suggestions made during the defense counsel's cross-examination of the victim.
We next turn to that portion of Chance's testimony concerning characteristics of child abuse victims in general. Our discussion by necessity involves Mississippi Rule of Evidence 702 governing expert testimony. With regard to expert opinion, the inquiry of the trial judge is two-fold: (1) "Is the field of expertise one in which it has been scientifically established that due investigation and study in conformity with techniques and practices generally accepted within the field will produce a valid opinion?" (House, 445 So.2d at 822; Miss. Farm Bureau Ins. Co. v. Garrett, 487 So.2d 1320, 1326 (Miss. 1986)) and (2) will the proposed testimony assist the trier of fact? Miss.R.Evid. 702. Only where these questions can be answered in the affirmative should the expert opinion be admitted in evidence.
In the present case, appellant objected to the substance of Chance's testimony, but never objected to her credentials as an expert or to the legitimacy of the field of child therapy. Chance holds a master's degree in clinical social work and works as a child therapist in a clinical setting. She has been affiliated with the Hinds County Welfare Department, the Jackson Mental Health Center, and is now in private practice. In fact, appellant in his cross-examination complimented Chance on her credentials as "truly impressive." In Ivy v. State, 522 So.2d 740, 743-44 (Miss. 1988), this Court refused to disqualify an expert witness where proper objection was not preserved. See also May v. State, 524 So.2d 957 (Miss. 1988).
Appellant's next objection to Chance's testimony centers on its content, specifically the influence of a child sexual abuse syndrome or profile. At present, it is doubtful that any such profile or syndrome is generally accepted by the scientific community. Myers, Expert Testimony in Child Sexual Abuse Litigation, 68 Nebraska Law Review 1, 69 (1989). Until such time as a profile has been scientifically established, courts should be reluctant to allow expert testimony that a child displays the so-called typical characteristics of other victims.
We hold this portion of Chance's testimony to be improper but find it harmless on the record before us. The entire defense strategy in this case was predicated not on whether the victim was sexually abused but on the assumption that the child had been sexually abused by person(s) other than the defendant.
As early as pre-trial discussions, Hosford's counsel announced that his general trial strategy would be to attack the credibility of the complaining witness by maintaining that, because she had been subjected to previous sexual abuse by others (including her biological father), she was confused  regarding both the identity of the abuser and the nature of paternal displays of affection.
BY MR. HARKEY [The Prosecutor]: Judge, I am going to make a motion in limine so as to appraise the Court where the defense is going to be going in this case. [The child], splitting time between her mother, Mrs. Hosford, and her natural father, has also been abused by members of her natural father's family. She has been abused by both sides of the family. We feel that the defense in this *169 case is going to be that she was abused by people in Mobile and not by this gentleman, and that she is all confused and everything... .
* * * * * *
BY MR. HAMILTON [Defense Counsel]: Well, Your Honor, as it turns out that is exactly what the defense is going to prove. But so what. We are entitled to a defense.
The child victim of the abuse was called as the State's first witness. Direct examination was restricted to the specific incident occurring in January, 1985. On cross-examination, however, defense counsel chose to explore allegations made by the same witness against other family members.
BY MR. HAMILTON:
Q. [...], didn't you tell people that Paw Paw did something to you, too?
A. Yes.
Q. Who is Paw Paw?
A. Grandpa Cresong.
Q. Grandpa Cresong. And didn't you tell some people that Uncle Bill Erwin, you told people that he did something to you too, didn't you. (Pause) How many other people have done something to you, [...]?
A. Two.
Q. Two other people. Who are they?
A. Billy and Dwayne.
* * * * * *
Q. Oh, okay. You have already talked about that. Billy did something, Dwayne did something, Uncle Bill Erwin did something, and Paw Paw did something. Is that right?
Defense counsel also questioned the child regarding her failure to report the alleged sexual abuse when her grandmother took her to see a doctor the previous year. Finally, defense counsel attacked the child's credibility by posing questions which suggested that she had not disclosed the frequency of the appellant's molestation to anyone prior to trial, inquiring: "So today is the first time you have told anybody he has done it lots of times; is that right?"
Throughout the trial, the appellant repeatedly made statements to the effect that because the victim had been molested by her natural father (among others), she was unable to distinguish between expressions of healthy, natural paternal love and sexual advances. Further, the defense claimed that because of this prior molestation, the child was driven to make allegations of abuse against any person assuming a paternal role. In his closing argument, counsel for Hosford recapitulated this defense theory, stating:
And that child confuses these things and gets confused. If you will recall, every man in the [child's life] that we expect any child to love, she accused each one of one time or another of what we consider or what we determine to be sexual molestation. If there was any other man in that child's life who she loved, I suggest to you she would have said they, too, sexually molested her. There was her grandfather, and her uncle.
After the child had testified, child therapist Brenda Chance was called to the stand. Most of Chance's testimony is admissible under Rule 702 of the Mississippi Rules of Evidence. State v. Myers, 359 N.W.2d 604, 609 (Minn. 1984)); See also State v. Hester, 114 Idaho 688, 760 P.2d 27, 32 (1988); and Townsend v. State, 103 Nev. 113, 734 P.2d 705, 708 (1987). Chance's testimony regarding the victim's behavior, especially her failure to immediately report the many incidents of abuse, is plainly a subject beyond common experience and one where "specialized knowledge will assist the trier of fact to understand the evidence of to determine a fact in issue." Miss.R.Evid. 702.
The claim that Chance's testimony relating her conclusion that the child had been "chronically" sexually abused constitutes reversible error, as Hosford contends, is without merit. At trial, Hosford did not dispute that the child had been the victim of some form of sexual abuse inflicted by some adult. Indeed, that fact was central to his defense.
*170 In the unusual context of this case, where the defense admitted that the child was a sexual abuse victim, there is no reversible error in allowing expert witness Brenda Chance to give her opinion that the child exhibited the characteristics of a sex abuse victim.
For the reasons stated above, Assigned Error II is rejected.

III.

THE LOWER COURT ERRED IN DENYING THE APPELLANT'S MOTION FOR A MISTRIAL WHEN THE STATE ADDUCED DISCOVERABLE EVIDENCE WHICH WAS NOT PROVIDED TO THE APPELLANT OVER THE OBJECTIONS OF THE APPELLANT AND IN VIOLATION OF UNIFORM CRIMINAL RULES OF CIRCUIT COURT PRACTICE 4.06, AND WHICH CREATED UNFAIR SURPRISE AND DENIED APPELLANT'S RIGHT TO A FAIR TRIAL.
The appellant contends that the State violated criminal discovery rule 4.06 in that Brenda Chance possessed certain discoverable evidence in the form of notes and that the content of those notes constituted unfair surprise resulting in an unfair trial. However, the State had no knowledge of Chance's notes and never looked at them or used them in any way. Chance had no notes with her on the witness stand and the only written instrument furnished the prosecutor was the report from Brenda Chance, which was the same report that had been furnished to the appellant's counsel. (Chance did have a resume of her testimony, which the lower court put into the record, and which was available to the appellant).
The assigned Error III is rejected.
There being no reversible error in the trial below, the judgment of the lower court is affirmed.
CONVICTION OF SEXUAL BATTERY AND SENTENCE TO THIRTY YEARS IN THE MISSISSIPPI DEPARTMENT OF CORRECTIONS UNTIL SAID SENTENCE IS FULLY COMPLIED WITH AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and BLASS, JJ., concur.
DAN M. LEE, P.J., dissents without opinion.
PITTMAN, J., not participating.