584 So.2d 383 (1991)
Richard Lee GRIFFITH
v.
STATE of Mississippi.
No. 07-KA-58672.
Supreme Court of Mississippi.
July 3, 1991.
*384 M. Charles May, Jackson, for appellant.
Edwin Lloyd Pittman, Atty. Gen., elected Supreme Court Justice Jan. 3, 1989, Mike C. Moore, Atty. Gen., Pat S. Flynn, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
SULLIVAN, Justice, for the Court:
On February 11, 1987, Richard Lee Griffith was indicted for the sexual battery of Sally S., a ten-year-old mentally retarded female, in violation of Miss. Code Ann. § 97-3-95. He was charged with having committed the offense on or about November 9, 1985. On July 21, 1987, Griffith was convicted in the Circuit Court of the First Judicial District of Hinds County of the felonious sexual penetration with his finger of Sally S., and was sentenced to fifteen years, ten of which were suspended. Because of the erroneous admission of hearsay testimony by the victim's teacher, we reverse. We also furnish guidelines for the courts to use in determining whether out-of-court statements made by a victim of child sexual abuse should be admitted into evidence before a jury.

FACTS
At Griffith's trial, the first witness for the State was Sally S. The defense objected to her testimony on the basis that she was not a competent witness. Sally's mother, Betty Jean, was the next witness. She testified that her daughter was mentally retarded. She said Sally was sometimes truthful and had a very short memory span. She also testified that she did not believe the defendant had sexually abused Sally, although she did believe someone else had done so.
Judy Thompson, a psychometrist with the Jackson Public Schools, had conducted a mental evaluation of Sally in 1985. She testified that the child was mentally retarded, with an I.Q. ranging from 62 to 67, and was below average in "academics, social interaction, and intellectual activities."
Dr. Nina Bess Goss Moffatt, director of the out-patient clinic and the Department of Psychiatry at the University Medical Center, examined Sally on June 19, 1987. Dr. Moffatt is a practicing and teaching psychiatrist. Sally's mother brought Sally to Dr. Moffatt so that she could determine if Sally was telling the truth. Dr. Moffatt told her that she could not any more make that determination about Sally than she could about Sally's mother.
From her examination of Sally, Dr. Moffatt determined that Sally had congenital encephalopathy with a small head, and paralysis. Sally had suffered from seizures and a paralysis on her right side but had improved. She was friendly and cooperative, and when questioned about the alleged sexual abuse, admitted that it had occurred. "She did say that she had been molested but she did not tell us who this person was. Her speech is very simple with two or three word sentences."
Dr. Moffatt was of the opinion that Sally could not testify in court. "We really didn't think she could because she was easily intimidated and we really didn't feel that it was an appropriate thing to do with this little girl." Dr. Moffatt also indicated that she believed that Sally, with a reading level of a first grader and an I.Q. of mild retardation, was not capable of being cross-examined in court. "I think that it would be harmful to this little girl to subject her to this. I think it would scare her to death."
Dr. Moffatt did testify that she believed that Sally was capable of relating the truth about what had happened to her to someone who was used to dealing with children and who Sally trusted. Dr. Moffatt said that if she had seen Sally over a period of time, she could have developed that kind of relationship with Sally.
*385 Sue Vaughn holds a master's degree and teaches mentally retarded children. In 1985, she was employed at the Lake Elementary School in Jackson. Sally was one of her pupils. She testified about Sally's behavior on November 9, 1985:
Q. Would you tell the Court in your own words what circumstances it was that she related this information to you?
A. Sally that day seemed to be very upset. She commented about her stomach was bothering her. Sally was usually always basically a, you know, happy child. She never complained, and if she did I knew that maybe she was sick or felt bad because at times she would complain about her heart hurting. And I told her, I said, "Sally, if your stomach hurts, go to the bathroom." "I don't have to go to the bathroom." I said, "Well, lay down on the mat." And she, you know, that didn't seem to help. So I took her out in the hall and I asked her, I said, "Sally what is wrong?" And she said 
BY MR. MAY:
Your Honor, we are going to object again.
BY THE COURT:
The objection will be overruled.
BY MR. WALLACE:
Q. Continue, please.
A. I asked her what was wrong with her and she just would make the comment like, "You know what is wrong with me." I said, "I don't know unless you tell me." So she told me, she said, "[That man] has been messing with me." I said, "Doing what?" She said, "You know." I said, "I don't know unless you tell me." And she said, "He has been playing with me and doing things to me that he shouldn't do."
BY MR. MAY:
Your Honor, may we have a continuing objection to this line of questions and answers?
BY THE COURT:
You can make your objections. The objection will be overruled.
A. So, after Sally told me what had gone on it upset me and I took her to the principal's office. And I told the principal that we had something that we had to discuss with her. So I said, "Sally, we are going to play a little game and I am going to pretend to be the [man]." And I said, "Now, get in my lap." She got up in my lap and I said  she already told me that [the man] had fondled her, and I said, "Take my hand and put it where [the man] put it." She rubbed it on her chest and when we started down toward her legs she jumped out of my lap and she said, "Don't do it. It hurts." I said, "Don't do what?" She said, "Your fingernail hurts when you put it in me." And she had told me what had happened, that the mother had gone to the grocery store and the little brother had gone outside to play, [the man] had taken her into the bedroom and that is where it happened. And Sally with her mild retardation could not have told this story twice and almost word for word if she had not experienced it. That is the reason why I truly believe her.
Vaughn further testified that Sally said that when her mother returned from the grocery store and was told what had happened, her mother said, "Sally, he didn't do that." The circuit court admitted this testimony over defense objection.
Dr. Mary Gail Armstrong, a physician with a specialty in family practice, examined Sally on March 6, 1986. She testified that Sally did not have an intact hymen. The introitus, or opening to the vagina, was enlarged to a point beyond what she would have expected for a child of Sally's age. When asked about causation for this condition, she replied, "One of the strong opinions that I might have might be sexual abuse."
Dr. Armstrong further testified that Sally told her that Griffith had touched her on her private parts. She said that Griffith was the "only person that the child related *386 any possible problem with." Dr. Armstrong found no sign of tearing, scarring or bruising.
When the State rested, the defendant moved for a directed verdict. The court overruled the motion. Griffith then testified in his own defense. He denied having sexually molested Sally in any way. Instead, he suggested that his stepson, who he said was also mentally retarded, had abused Sally. Griffith testified that he had seen the two "wrestling," which Griffith considered improper.

LAW

I.
In his first assignment of error, Griffith contends that the court erred in permitting Sally to testify. Since Sally's testimony was innocuous, we do not address the assignment.
Griffith also complains of the admission of hearsay testimony through Drs. Nina Moffatt and Mary Gail Armstrong and through Sally's teacher, Sue Vaughn, who were allowed to testify as to what Sally told them. The circuit court found the statements admissible under Rule 803(2), (3), and (4) of the Mississippi Rules of Evidence. Those provide as follows:
RULE 803. HEARSAY EXCEPTIONS:
AVAILABILITY OF DECLARANT IMMATERIAL
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
... .
(2) Excited Utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
(3) Then Existing Mental, Emotional, or Physical Condition. A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.
(4) Statements for Purposes of Medical Diagnosis or Treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.
During Dr. Moffatt's examination of Sally, Sally merely informed Dr. Moffatt that she had been molested. She did not name the person. Therefore, Dr. Moffatt's testimony was admissible under Rule 803(4). Dr. Armstrong's testimony was also admissible under Rule 803(4) since the services she rendered were medical. See Goodson v. State, 566 So.2d 1142, 1147 (Miss. 1990); Leatherwood v. State, 548 So.2d 389, 398 (Miss. 1989).

II.
Sue Vaughn was allowed to testify as to statements made to her by Sally. The court allowed admission of these statements under Rules 803(2) and (3). However, the testimony by Sue Vaughn does not indicate when those statements were made to her by Sally. Because the evidence is insufficient to support a finding that the statements were made by Sally while she "was under stress of excitement caused by the event or condition" or that the statements were of Sally's "then existing state of mind, emotion, sensation, or physical condition," we must reverse and remand for a new trial.
We note that Sue Vaughn was also allowed to testify that in her opinion, Sally had told her the truth because Sally "could not have told this story twice and almost word for word if she had not experienced it. That is the reason why I truly believe her."
A direct opinion offered by a witness in a child sexual abuse case as to the child's veracity has been held by a majority of courts to be inadmissible. State v. Holloway, *387 82 N.C. App. 586, 587, 347 S.E.2d 72, 73 (1986); Head v. State, 519 N.E.2d 151, 153 (Ind. 1988); State v. Moran, 151 Ariz. 378, 385, 728 P.2d 248, 255 (1986); People v. Oliver, 745 P.2d 222, 225 (Colo. 1987); see generally cases cited in Myers, et al., Expert Psychological Testimony About Child Complaints in Sexual Abuse Prosecution, 68 Neb.L.Rev. 1, 121, fn. 528 (1989). We have indicated that such testimony is, at best, "of dubious competency." Williams v. State, 539 So.2d 1049, 1051 (Miss. 1989). See also Goodson v. State, 566 So.2d 1142, 1153 (Miss. 1990); Hosford v. State, 560 So.2d 163, 166-167 (Miss. 1990); House v. State, 445 So.2d 815, 821-823 (Miss. 1984). On remand, we caution the court against allowing direct comments as to Sally's veracity.

III.

ON REMAND
On remand, the court must determine whether the statements made to Vaughn by Sally are admissible hearsay. That determination must take into account the recent additions to the Rules of Evidence.
First, the court should decide if any of the statements come under either the "excited utterance" exception of Rule 803(2) or the "then existing mental, emotional, or physical condition" exception of Rule 803(3) if Sue Vaughn is able to pinpoint the date when Sally made the statements to her. See generally, U.S. v. Harris, 733 F.2d 994 (2d Cir.1984); State v. McCafferty, 356 N.W.2d 159 (S.D. 1984); U.S. v. Golden, 671 F.2d 369 (10th Cir.1982), cert. denied, 456 U.S. 919, 102 S.Ct. 1777, 72 L.Ed.2d 179; U.S. v. Ponticelli, 622 F.2d 985 (9th Cir.1980), cert. denied, 449 U.S. 1016, 101 S.Ct. 578, 66 L.Ed.2d 476; U.S. v. Glenn, 473 F.2d 191, 154 U.S.App.D.C. 61 (1972).
The court must also examine Sally's statements to Sue Vaughn in light of Rule 804(a)(6), a recent adoption by this Court. Rule 804(a)(6) provides that a declarant is unavailable in the following situation:
(6) In the case of a child, because of the substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused.
Rule 804(a)(6) must be read in conjunction with Rule 617 of the Mississippi Rules of Evidence, another recent enactment. Rule 617 allows a child sexual abuse victim to testify by way of closed-circuit television upon a finding by the court that "there is a substantial likelihood that the child will suffer traumatic emotional or mental distress if compelled to testify in open court and, in the case of a criminal prosecution, if compelled to testify in the presence of the accused."
The U.S. Supreme Court approved such a procedure in Maryland v. Craig, 497 U.S. ___, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). In order to justify using the procedure, the State must make an adequate showing of necessity.
The requisite finding of necessity must of course be a case-specific one: the trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. [Citations omitted]. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. [Citations omitted]. Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimus, i.e., more than `mere nervousness or excitement or some reluctance to testify.' [Citations omitted].
*388 Maryland v. Craig, 497 U.S. at ___, 110 S.Ct. at 3169, 111 L.Ed.2d at 686 (1990).
The availability of the child to testify is not measured solely in terms of physical presence but refers as well to the child's ability to communicate in a trial setting. We note that Sally's ability to communicate in court may be jeopardized by her retarded mental condition. Once the court determines that Sally is or is not available to testify, the court should determine whether the statements made by Sally to Sue Vaughn are admissible under 803(25). That Rule provides:
(25) Tender Years Exception. A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
In Idaho v. Wright, 497 U.S. ___, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990), the Supreme Court provided some guidance as to whether hearsay statements bear "particularized guarantees of trustworthiness" which would render them admissible under the Confrontation Clause. The Court noted:
The state and federal courts have identified a number of factors that we think properly relate to whether hearsay statements made by a child witness in child sexual abuse cases are reliable. See, e.g., State v. Robinson, 153 Ariz. 191, 210, 735 P.2d 801, 811 (1987) (spontaneity and consistent repetition); Morgan v. Foretich, 846 F.2d 941, 948 (CA4 1988) (mental state of the declarant); State v. Sorenson, 143 Wis.2d 226, 246, 421 N.W.2d 77, 85 (1988) (use of terminology unexpected of a child of similar age); State v. Kuone, 243 Kan. 218, 221-222, 757 P.2d 289, 292-293 (1988) (lack of motive to fabricate). Although these cases (which we cite for the factors they discuss and not necessarily to approve the results that they reach) involve the application of various hearsay exceptions to statements of child declarants, we think the factors identified also apply whether such statement bear `particularized guarantees of trustworthiness' under the Confrontation Clause. These factors are, of course, not exclusive, and courts have considerable leeway in their consideration of appropriate factors. We therefore decline to endorse a mechanical test for determining `particularized guarantees of trustworthiness' under the Clause. Rather, the unifying principle is that these factors relate to whether the child declarant was particularly likely to be telling the truth when the statement was made.
Idaho v. Wright, 497 U.S. at ___, 110 S.Ct. at 3150, 111 L.Ed.2d at 656.
Finally, in examining the inherent trustworthiness of such hearsay testimony prior to admitting it into evidence before the jury, the circuit court cannot consider other corroborating evidence of Griffith's guilt. "To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial." Id. at ___, 110 S.Ct. at 3150, 111 L.Ed.2d at 657. Although Rule 803(25) requires corroborating evidence of the act where the child is unavailable as a witness before the hearsay statement may be admitted into evidence, the fact that there is corroborating evidence does not by itself render the statement admissible. The statement has to bear "particularized guarantees of trustworthiness" in order to be admitted.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., DAN M. LEE, P.J., and PRATHER, ROBERTSON and BANKS, JJ., concur.
HAWKINS, P.J., concurs in result only.
*389 McRAE, J., dissents, without separate written opinion.
PITTMAN, J., not participating.