906 So.2d 16 (2004)
Brooks BARNES, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-00577-COA.
Court of Appeals of Mississippi.
October 12, 2004.
Rehearing Denied March 8, 2005.
Certiorari Denied June 30, 2005.
*18 Michael R. Farrow, Columbus, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
EN BANC.
IRVING, J., for the Court.
¶ 1. Brooks Barnes was tried and convicted, by an Oktibbeha County jury, of fondling his niece. He was sentenced to serve ten years in the custody of the Mississippi Department of Corrections and five years of post-release supervision. Barnes appeals and contends (1) that the indictment failed to properly advise him of the alleged offense, thereby depriving him of a fair opportunity to prepare his defense, (2) that, because of the victim's tender years, she was not competent to testify, (3) that witness Paul Davey should not been allowed to give certain testimony, and (4) that the trial court improperly excluded certain defense jury instructions.
¶ 2. We reject each of Barnes's contentions and affirm his conviction and sentence.

FACTS
¶ 3. At the time of trial, Brandi Love was eight years old.[1] She testified that when she was four years old, her uncle Brooks Barnes showed her pictures of nude people and masturbated in front of her while her family was visiting during the Christmas holidays.[2] Brandi further stated that when she was six years old, Barnes showed her pictures of his nude girlfriend and rubbed his penis against Brandi's stomach while babysitting her during a summer visit to her grandparents' house. Brandi also testified that on another occasion she saw her uncle's penis while he prepared her breakfast because his bathrobe was open. Brandi reported the incidents to her mother in August 2000, and her parents took her to see a counselor.
¶ 4. Child psychologist, Paul Davey, testified that Brandi was six when he first saw her and that she made sexually-graphic statements which were beyond the typical or normal experiences of a six-year-old child. Davey also testified that Brandi identified Barnes as her abuser. He further testified that Brandi informed him that she touched Barnes's "front part" and "clear watery stuff" came out and that Barnes licked her "front butt" and rubbed her down there with his fingers.[3] Davey testified additionally that Brandi told him that, while she was at her grandparents' house, Barnes wiggled his penis on her stomach and rubbed it back and forth. She also told him about the time when Barnes fixed her breakfast while exposed. Finally, Davey testified that Brandi described a nude picture of Barnes's girlfriend that she had seen. Brandi also told Davey that Barnes had shown her pictures of other naked people.
¶ 5. Barnes was arrested after police found several pornographic photos and a nude photo of his girlfriend on his computer's hard drive. Additional facts will be presented during our discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES

(1) Indictment
¶ 6. Barnes first argues that the indictment failed to properly advise him of *19 the date of the offense because it alleged that the offense occurred over more than a two-year period. He maintains that as a result, he was deprived of a fair opportunity to prepare his defense.
¶ 7. "An indictment serves to alert the defendant of the charge against him." Ishee v. State, 799 So.2d 70, 76(¶ 18) (Miss. 2001) (citing Westmoreland v. State, 246 So.2d 487, 489 (Miss.1971)).
¶ 8. Barnes cites Moses v. State, 795 So.2d 569 (Miss.Ct.App.2001) in support of his argument. In Moses, the defendant was first charged under an original indictment with fifteen counts of rape, two counts of sexual battery, and five counts of fondling. The original indictment set the alleged crimes as occurring between June 1994 and September 1997. On appeal, this Court reversed and remanded a number of the counts in the indictment due to a lack of specificity in the dates and facts of the alleged incidents. Id. at 571-72 (¶¶ 13-18).
¶ 9. We first note that the State properly recognizes that since Barnes was acquitted of the sexual battery charge, the part of the indictment concerning that count cannot be a basis for error. Thus, we find it unnecessary to discuss that particular count.
¶ 10. The record indicates that the original indictment alleged that the fondling charge occurred between July 8, 1998, and September 1, 2000. At the conclusion of the State's case, the trial judge allowed the State to amend the indictment to narrow the dates to May 1, 2000 through August 1, 2000.
¶ 11. Barnes's reliance on Moses is misplaced. Unlike in Moses, where the defendant was indicted on numerous counts against two victims, Barnes was only indicted on two counts against one victim. Further, the individual counts in the indictment in Moses were unclear and phrased identically, and the time of the alleged offenses, as to Child A, spanned over a period of more than three years, and as to Child B, no time line at all was specified. Moses, 795 So.2d at 570 (¶¶ 4-5).
¶ 12. We find that the indictment adequately informed Barnes that he was charged with fondling. Although the indictment stated that the offense occurred between July 8, 1998 and September 2000, it was amended at the conclusion of the State's case to narrow to a three-month window the period of time in which the offense occurred. Further, Brandi was very specific as to the dates of the offense. She even provided particular reasons or events which caused her to be at Barnes's home on the dates in question. For the forgoing reasons, we find that this issue is without merit.

(2) Competency of the Victim
¶ 13. Barnes's next allegation of error concerns Brandi's competency as a witness to testify against him. Barnes specifically argues that Brandi was not competent to testify as a witness at trial because of factors such as her age, her answers to questions presented to her during the competency hearing, impeachment of her on cross-examination, and her lack of morals and religious upbringing.[4]
¶ 14. The State, however, contends that there is nothing to suggest an abuse of discretion by the trial court in deeming Brandi competent to testify because Brandi *20 demonstrated that she knew the difference between a lie and the truth, understood the importance of an oath to tell the truth, indicated that she remembered most of what had occurred, and knew that she had to indicate what she did not recall in the event that she was asked a question in which she had no recollection.
¶ 15. "Mississippi courts generally allow children of tender years to testify if [they are] competent." Mohr v. State, 584 So.2d 426, 431 (Miss.1991). "It is in the sound discretion of the trial judge to determine the competency of a child witness." Id. "Before allowing the child to testify, the judge should determine `that the child has the ability to perceive and remember events, to understand and answer questions intelligently, and to comprehend and accept the importance of truthfulness.'" Id. (quoting House v. State, 445 So.2d 815, 827 (Miss.1984) (overruled on other grounds)).
¶ 16. The trial court conducted a hearing outside the presence of the jury to determine whether Brandi was competent to testify as a witness. Brandi testified that she knew the difference between a lie and the truth and that telling a lie was wrong. She also stated that she knew why she was in court, knew that she would be questioned by attorneys, remembered most of what had occurred, and would be able to say she did not remember if asked a question about a matter in which she had no recollection. As a result, the trial judge found that Brandi was a competent witness.
¶ 17. We also note that although Barnes requested a hearing to determine Brandi's competency to testify, the record does not indicate that he specifically objected to the child's testimony at trial on the basis of competency. "[F]ailure to make a contemporaneous objection at trial constitutes a waiver of any error subsequently assigned." Moawad v. State, 531 So.2d 632, 634 (Miss.1988), (citing Irving v. State, 498 So.2d 305 (Miss.1986)). Nevertheless, we do not find an abuse of discretion in the trial court's conclusion that Brandi was competent to testify. As a result, this issue lacks merit.

(3) Counselor's Testimony
¶ 18. Barnes contends that the trial court erred in allowing expert witness Paul Davey to testify that Brandi gave statements to him that were consistent with an abused child and that he observed non-physical indications of sexual abuse in Brandi. Barnes contends that Davey's testimony constituted either an impermissible comment on the child's truthfulness, or an impermissible comment on a "child sexual abuse syndrome or profile." The State counters that Davey did not assert in his testimony that Brandi exhibited characteristics of child-abuse syndrome, but rather, he simply gave an explanation of the non-physical indicators of abuse which he observed in Brandi.
¶ 19. Mississippi Rules of Evidence 702, which governs the admissibility of expert testimony, states:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.
¶ 20. At trial, Davey was qualified as an expert in the field of counseling, specializing in adolescent children in sexual abuse *21 cases. On direct examination, the following exchange occurred:
Q: And the statements that Brandi has made to you and what she has been able to verbalize as far as what happened and the actions that you observed, was that consistent with a child who has been abused?
BY MR. FARROW: I object to that your Honor.
BY THE COURT: Overruled. He can answer that.
A: From the experience that I've had with other children, where abuse was corroborated in some way, yes, her statements were consistent.
Further, on redirect, Davey testified as follows:
Q: Now, you diagnosed Brandi as having a generalized anxiety disorder?
A: Yes, ma'am.
Q: Are there any other symptoms of sexual abuse, non-physical indicators of sexual abuse that you've used as part of your diagnosis for Brandi?
A: Yes, ma'am.
Q: And what were they?
A: Being uncomfortable, feeling uncomfortable, being agitated, irritable. There's aif you will look at the notes for November 8th of 2000, she was agitated and upset at that visit, threw cards on the table, threw cards behind the bookcase, tried to climb up on the table, climbed under the table and refused to come out, those kinds of symptoms.
Q: So you did observe non-physical indications of sexual abuse with Brandi?
A: I observed non-physical  I observed non-physical indicators that can be associated with sexual abuse.
BY MR. FARROW: Your Honor, I'm going to object to that and move that it be stricken. The question was as to anxiety. It had nothing to do with sexual abuse. It was anxiety was her question.
¶ 21. Barnes cites both Griffith v. State, 584 So.2d 383 (Miss.1991), and Hosford v. State, 560 So.2d 163 (Miss.1990) in support of his argument that Davey's testimony was prohibited. In Griffith, the supreme court noted that a direct opinion offered by a witness in a child sexual abuse case as to the child's veracity has been held by a majority of courts to be inadmissable. Griffith, 584 So.2d at 386. Further, the Court in Hosford warned against allowing syndrome testimony, and commented that "[a]t present, it is doubtful that any such profile or syndrome is generally accepted by the scientific community. Until such time as a profile has been scientifically established, courts should be reluctant to allow expert testimony that a child displays the so-called typical characteristics of other victims." Hosford, 560 So.2d at 168. (citation omitted).
¶ 22. We find that Barnes's reliance on Griffith is misplaced. It is plain to see from the colloquies set forth above that Davey did not offer a direct opinion that Brandi was telling the truth. However, whether Davey's testimony ran afoul of the prohibition announced in Hosford is a closer question. While Davey did not specifically testify that Brandi displayed the "so-called typical characteristics" of child-victims of sexual abuse, he came very close. However, assuming that his testimony crossed the line, we find no reversible error because Barnes never objected to the testimony on the basis that he now urges on appeal. As can be observed from the quoted passages, Barnes's first objection was a general objection, providing no *22 basis or explanation for the objection, and the basis for his second objection was that the answer given by Davey was unresponsive to the question. It is well-settled law in this jurisdiction that the objecting party is obligated to articulate the specific basis for the objection being made. Seeling v. State, 844 So.2d 439, 445(¶ 17) (Miss.2003). Equally well settled is the principle that a trial court cannot be put in error unless it has had an opportunity to pass on the question. Id. at (¶ 18). Therefore, we find that Barnes has not preserved this issue for appellate review.

(4) Jury instructions
¶ 23. Barnes's final allegation of error concerns four proposed jury instructions which were refused by the trial judge. He contends that the trial court improperly excluded instructions D-2, D-3, D-4, and D-6.
¶ 24. The law is well settled that "[w]hen determining whether error lies in the granting or refusal of various instructions, we must consider all the instructions given as a whole." Simmons v. State, 805 So.2d 452, 476(¶ 37) (Miss.2001) (citing Coleman v. State, 697 So.2d 777, 782 (Miss. 1997)). "`When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.'" Simmons, 805 So.2d at 476(¶ 37) (quoting Coleman, 697 So.2d at 782).
¶ 25. The record reflects that the State objected to instruction D-2, which explained that Brandi's knowledge of sexual matters was acquired from persons or experiences other than Barnes, on the basis that it was a comment on the weight of the evidence. The trial judge agreed and refused the instruction. The State further objected to instructions D-3 and D-4 on the basis that they were argumentative, and the trial judge agreed and refused the instructions. Instruction D-6 read:
The Court instructs the jury that the defendant contends that he did not have access to Brandi Love to commit the offense alleged. Unless you find beyond a reasonable doubt that the defendant committed each element of the offense or charge, you will find him not guilty of that offense.
In response to an objection to the instruction by the State, the trial judge stated:
Whether or not he has access is not an element of the offense nor is it a defense under the law. The State must prove not only that he had access, but that he did that which he is accused of doing beyond a reasonable doubt. That's why I agree with the second sentence which says, "Unless you find beyond a reasonable doubt that the defendant committed each element of the offense charged, you are instructed to find him not guilty of that offense."
The judge further stated that he would give an instruction which explained that the burden was on the State to prove each element of the offense charged, and that if the State failed to meet its burden, then the jury should return a not guilty verdict. The judge then refused the proposed instruction as drafted.
¶ 26. Although it is unclear from the record whether Barnes actually drafted another instruction as recommended by the judge, a review of the record reveals that the court's instruction C.12(A) and State's instruction S-3A fulfilled the purpose of instruction D-6. The court's instruction informed the jury that a presumption of innocence exists that "places upon the State the burden of proving the defendant guilty beyond a reasonable doubt." Instruction 3-A reads as follows:
The Court instructs the Jury that if you find from the evidence in this case beyond *23 a reasonable doubt that the Defendant, Brooks Barnes, a person above the age of 18 years, did on or about and between May 1, 2000, through August 1, 2000, unlawfully, willfully, feloniously, and for the purpose of gratifying his lust or indulging his deprave, licentious sexual desires, handle, touch or rub with his hands or any part of his or her body or any member thereof, the body of [Brandi Love], a female under the age of sixteen (16) years, then you shall find the Defendant guilty of Fondling [sic] as charged in Count 2.
Therefore, considering together all of the instructions granted by the court, we find that the jury was adequately instructed on the elements of the offense and relevant issues without having heard Barnes's proposed instructions. Thus, this issue lacks merit.
¶ 27. THE JUDGMENT OF THE OKTIBBEHA COUNTY CIRCUIT COURT OF CONVICTION OF COUNT TWO, FONDLING, AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] The name of the minor victim has been changed to protect her identity.
[2] At the time of the alleged incidents, Barnes lived at home with his parents. Brandi testified that the incidents occurred when she visited her grandparents on holidays and during the summer.
[3] Brandi referred to her vagina as her "front butt."
[4] Brandi's mother testified that she and her ex-husband took Brandi to a nudist camp on two occasions when Brandi was five years old. There was also testimony that Brandi was exposed in her home to a large painting of a nude woman depicted as touching her genital area.