604 So.2d 741 (1992)
Earnest Eugene QUIMBY
v.
STATE of Mississippi.
No. 89-KA-0734.
Supreme Court of Mississippi.
July 15, 1992.
M. Charles May, Thomas J. Lowe, Jr., Jackson, for appellant.
Michael C. Moore, Atty. Gen., Patricia W. Sproat, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PRATHER and SULLIVAN, JJ.
*742 SULLIVAN, Justice, for the court:
This is yet another sordid case involving a father's victimization of his young daughter to fulfill his perverted sexual desires. It is, likewise, another case requiring meticulous scrutiny by this Court of out-of-court statements made to third parties by child victims of sexual abuse.
Earnest Eugene Quimby prosecutes this appeal from his conviction of sexual battery and the twenty (20) year sentence imposed by the lower court. Quimby, a divorcee, raises issues dealing with the admissibility of hearsay testimony describing acts of sexual abuse involving himself and his five (5) year old natural daughter.
We are loath to reverse. Nevertheless, because of the improper admission, sans the findings required by our rules of evidence, of hearsay testimony involving statements made by the child to police detective Edna Drake in 1986 and 1988, this cause is reversed and remanded for a new trial.

The Issues
Earnest Eugene Quimby was indicted, tried and convicted of the offense of sexual battery defined by Miss. Code Ann. § 97-3-95 (Supp. 1991). According to the indictment, Quimby, on the 28th day of June 1988, committed sexual battery upon his then five (5) year old daughter "... by penetrating her vaginal opening with his finger."
Quimby raises serious questions dealing with the quality, as opposed to the quantity, of the State's evidence. First, he assails the prosecution's cross-examination of the defendant about his prior conviction by guilty plea of simple assault, a misdemeanor, which flowed from an indictment returned in 1986 for gratifying his lust with the same victim. Second, Quimby complains about the introduction into evidence during the State's case-in-rebuttal of hearsay testimony elicited from police detective Edna Drake concerning a prior single act of similar sexual misconduct with the same prosecutrix that had taken place in August of 1986, approximately twenty-two (22) months prior to the offense charged in the case at bar. The admissibility of similar testimony elicited from Drake during the State's case-in-chief describing the abuse taking place in 1988 is also a viable issue. Finally, a question concerning the remoteness of the prior single act of sexual abuse committed in 1986 is also presented. Because of our disposition of issues one and two, we find it unnecessary to address the third issue.

The Facts
The victim is the six (6) year old natural daughter of the defendant, Earnest Eugene Quimby. At the time of the offense here involved, she was five (5) years of age and lived in Crystal Springs with her mother, Carla Sojourner, her stepfather Mike Sojourner, and her half brother, Ashley. She attended kindergarten at the Crystal Springs Middle School.
On June 28, 1988, the circus was in town. Gene Quimby, a resident of Jackson, had won several tickets to the event during a radio promotion and planned to attend with his daughter and Ashley, his six (6) year old stepson.
According to testimony elicited from both his daughter and Ashley during Quimby's trial for sexual battery, at some point in time prior to the trio's attendance at the nighttime performance, the defendant poured lotion on his hands and digitally penetrated his daughter's vagina. Ashley was both an ear and eyewitness to the event which took place in a bedroom belonging to Olnie Arrington with whom Quimby shared an apartment.
The prosecution's case against Quimby consisted of the testimony of the following four witnesses:
His daughter testified her father put lotion on his finger and rubbed her "tee-tee," i.e., her vagina, with that finger. The act took place in the bedroom usually occupied by Olnie Arrington who shared the apartment with her father. With the aid of an anatomically correct doll, his daughter pointed to the area where she was touched by her father. She testified that Quimby penetrated her vagina with his finger, all *743 within eyesight of her brother, Ashley, who witnessed parts of the sordid event.
The first reference to prior sexual acts involving the defendant and his daughter occurred during the State's direct examination of the youthful victim. She was asked if her daddy had ever touched her like that before. Relevant colloquy is quoted as follows:
Q Okay. Now had your dad ever touched you like that before that you remember?
A No, ma'am.
Q You don't remember?

A No, ma'am.

Q Do you remember ever talking to the police before it happened this time?
A Yes, ma'am.
Q Do you remember what you talked to them about?
A Yes, ma'am.
Q What did you talk to them about?
A Gene.
Q What happened before?

A (Pause).
Q Do you remember?

A No, ma'am.

Q But you talked to the police before and you just can't remember what it was about?
A Yes, ma'am.
Q Okay.
BY MS. ANDERSON: I beg the Court's indulgence.
BY THE COURT: All right.
(Off the record). [Emphasis supplied]
The record reflects that his daughter was three (3) years of age at the time of the prior incident in August of 1986, five (5) years of age at the time of the molestation allegedly taking place in June of 1988 for which Quimby was then on trial, and six (6) years of age at the time of Quimby's trial for sexual battery.
Ashley Cotton, a first grader and half brother to the victim, was an ear and eyewitness to the abuse that took place in Arrington's bedroom. He corroborated to a great extent his half sister's version of the incident.
Dr. Linda Ray, a pediatrician, testified she saw and examined the child on October 28, 1988. The results of her examination were consistent with sexual abuse.
Dr. Ray's examination revealed some redness of the genital area, an enlarged hymenal opening, and evidence of a healed tear in the mucosal surface. The location of the tear or scar in the 2:00 o'clock position was consistent with finger penetration. Dr. Ray characterized these findings as "soft signs" meaning they were not conclusive of sexual abuse but consistent with sexual abuse.
Despite his daughter's testimony that her daddy did it, despite corroboration from her half brother Ashley, an ear and eyewitness to the events, and despite the medical testimony elicited from Dr. Ray, the prosecution, for better or worse, wanted more. Enter police detective Edna Drake.
Ms. Drake, a detective assigned to the child protection unit, testified, over the defendant's timely and continuing objection, she investigated the incident of sexual abuse that allegedly took place on June 28, 1988, and interviewed the prosecutrix four months later on October 25, 1988. Ms. Drake testified the child told her the defendant, after putting lotion on his finger, penetrated her vagina with that finger and attempted to penetrate her vagina with his penis. The child also told Drake all this took place inside Olnie Arrington's bedroom in the presence of Ashley.
Earnest Quimby, the defendant, thereafter testified in his own behalf. He denied during direct examination "abusing" his daughter or any other child on the day in question or at any other time.
During cross-examination by the District Attorney, Quimby specifically denied he had ever molested his daughter or any other child. Following a brief evidentiary hearing conducted outside the presence of the jury, the defendant, pursuant to inquiries propounded by the District Attorney, admitted he had been previously charged with having touched his daughter on August 16, 1986, for licentious purposes and that he was subsequently indicted for gratification of lust in the wake of this *744 incident. Quimby, pursuant to further inquiries, also freely admitted that on August 23, 1987, he entered a guilty plea to a reduced charge of simple assault even though, according to Quimby, he didn't commit any acts constituting molestation. The record reflects the charge was reduced to simple assault because the victim was not emotionally prepared to go forward with her testimony.
Additional prosecutorial inquiries propounded during cross-examination generated fact-specific denials by Quimby of various details which were later refuted during the State's case-in-rebuttal via hearsay testimony elicited from Edna Drake.
At the close of the defendant's case-in-chief, the State called Rivers Carpenter, a child therapist, and recalled police detective Edna Drake for the purpose of rebuttal.
Officer Drake, again over the defendant's vigorous objection, testified during rebuttal she had interviewed the child in August, 1986, after the three (3) year old child was brought to the Juvenile Division of the Jackson Police Department by her mother. Drake vividly described how the child, with the aid of an anatomical doll, described what her father had done to her in 1986 on the previous occasion. Drake testified the child told her that she and her father were not wearing any clothing when they got on the bed. Drake further testified that the child, utilizing the anatomical doll, demonstrated to Drake how the defendant rubbed his penis down her legs and around her navel and how her father had inserted his finger inside her vagina. According to Drake, the child also said the defendant attempted to get her to place his penis inside her mouth but she told him she wasn't going to do that. She told her father to stop inserting his finger inside her vagina because she didn't like that. According to Drake, the child said Quimby didn't stop.
The defendant again objected and moved to strike Drake's rebuttal testimony. Quimby also requested a continuance in order to prepare a defense to the gratification of lust charge that flowed from the incident taking place on August 16, 1986. The circuit judge opined: "This testimony is admitted for the purpose of impeachment only."[1] The defendant eschewed any cross-examination of Ms. Drake.

A. Prior Misdemeanor Conviction Of Simple Assault
Several years prior to his trial for sexual battery Quimby was charged with gratifying his lust at his daughter's expense following the incident of touching and abuse that had occurred on August 16, 1986. On August 23, 1987, Quimby entered a guilty plea to a reduced charge of simple assault, a misdemeanor.
The trial court granted Quimby's pretrial motion in limine prohibiting the State from using the prior misdemeanor conviction for simple assault. The judge ruled the child's testimony as to any previous acts of similar sexual misconduct with her would be admissible but not evidence of any previous convictions flowing in the wake of those acts.
The State, during its case-in-chief, sought to elicit from the child testimony concerning the previous incident of sexual abuse by her father in 1986 when she was only three (3) years of age. Although she could remember talking to the police at that time about her father, she could not remember any specific facts about the incident itself.
The defendant thereafter testified in his own behalf and blurted out during direct examination that he had "... never abused [his] daughter or any other child ever in any way, shape, form or fashion." When cross-examination began, he specifically denied ever molesting his daughter.
During a hearing conducted outside the jury's presence, the District Attorney proffered the fact that Quimby had been indicted for gratification of lust in 1986 and that he had subsequently entered a plea of guilty to a reduced charge of simple assault for which he received a $500 fine and a six (6) month suspended sentence with *745 fifteen (15) days to serve in the county jail. After informing the court of some of the specific facts surrounding the previous abuse, facts which, with the aid of anatomically correct dolls, had been told by the victim to police detective Edna Drake during the investigatory stage of the prior incident of sexual abuse, the District Attorney requested permission to develop this matter by asking Quimby fact-specific questions concerning the underlying circumstances of his arrest, indictment, and subsequent guilty plea to the reduced charge.
In the event Quimby denied the prior acts serving as a basis for the indictment for gratification of lust, and where, as here, the victim had no independent recollection of the prior acts of sexual abuse, the District Attorney proposed to offer in rebuttal the hearsay testimony of Edna Drake describing the specific acts of prior abuse as told to her by the child in 1986. The authority cited for the District Attorney's position was M.R.E. 804(a)(3) and 804(b)(5). The defendant timely objected on the grounds of remoteness, relevancy, and hearsay. After reading 804(a)(3) and 804(b)(5), the trial judge overruled the defendant's objections but made no specific findings.
What subsequently followed in the wake of the District Attorney's vigorous cross-examination of Quimby was a string of admissions and denials. Quimby admitted he had been previously charged with touching his daughter on August 16, 1986, for licentious purposes, that he had been indicted for gratification of lust following this incident, and that on August 23, 1987, he entered a guilty plea to a reduced charge of simple assault even though, according to Quimby, he didn't commit any acts constituting molestation.
Quimby denied, on the other hand, (1) that he had gratified his lust on this previous occasion; (2) that on August 16, 1986, he forced his daughter to get in bed without her clothing; (3) that he was naked and rubbed his penis against her legs and belly button; (4) that he inserted his finger inside her vagina; (5) that he attempted to make her suck his penis but she would not; and (6) that his daughter told him to stop. These denials concerning the previous abuse taking place on August 16, 1986, were elicited by the district attorney over defense counsel's continuing objection.
The State did not offer extrinsic or external evidence of Quimby's prior misdemeanor conviction for simple assault. Because Quimby freely admitted the existence of that conviction, the prosecution merely cross-examined him about it.[2]
Quimby claims it was error to permit the District Attorney to impeach his testimony by cross-examining him about a mere misdemeanor conviction for simple assault including the fact it stemmed from an indictment for gratification of lust. The prior conviction of a misdemeanor was patently inadmissible under M.R.E. 609 which requires that the conviction be either a felony-grade conviction or a conviction for a crime involving dishonesty or a false statement, whether felony or misdemeanor. See Ivy v. State, 522 So.2d 740, 744 (Miss. 1988).
Quimby argues his testimony concerning his prior misdemeanor conviction was inadmissible under the rules of evidence because the State itself opened up this line of questioning during cross-examination. We agree with the State's position it was Quimby who opened the door for cross-examination concerning his prior conviction when during direct examination he blatantly asserted: "I have never abused my daughter or any other child ever in any way, shape, form or fashion." [emphasis supplied] The word "abuse" does not necessarily carry sexual connotations. Quite clearly the term includes physical maltreatment in a nonsexual as well as a sexual context.
By virtue of Miss. Code Ann. § 97-3-7 (Supp. 1991), a person is guilty of simple assault if he, inter alia, "(a) attempts to cause or purposely, knowingly or recklessly *746 causes bodily injury to another." The record reflects that Quimby stated in his petition to enter plea of guilty to a reduced charge of simple assault that he did cause bodily injury or attempted to cause bodily injury to his daughter. Quimby should not be permitted to deceive the factfinder with absolute impunity. He told the jury during direct examination he had never "abused" his daughter when in truth and in fact he had previously been convicted by a plea of guilty of either attempting to cause or causing bodily injury to the child.
In the case at bar, the question of Quimby's guilt or innocence turned largely upon the credibility of the witnesses. Pitted against the defendant's general denial was the testimony elicited from his daughter and Ashley. The use of Quimby's guilty plea to simple assault on his daughter represents the proper use of a prior inconsistent statement to impeach the defendant's credibility as a witness under M.R.E. 613 and 801(d)(2), the defendant having denied during direct examination he had ever "abused" his daughter. We point out, however, this cross-examination concerning a conviction for a misdemeanor would have been improper had Quimby not "opened the door" for impeachment. See Gill v. State, 485 So.2d 1047, 1051 (Miss. 1986).
Even so, the district attorney went too far when he dipped into the sordid details of the previous abuse. While the introduction of the prior conviction for simple assault, under the facts of this case, was admissible for the purpose of impeachment, Quimby should not have been cross-examined about the details. Gallion v. State, 469 So.2d 1247, 1249 (Miss. 1985); Acevedo v. State, 467 So.2d 220, 226 (Miss. 1985).
Although the circuit judge sustained the defendant's motion in limine prior to the taking of live testimony, the trial judge could not have contemplated during his ruling in limine the scope of Quimby's blatant denial during direct examination. In short, the admissibility of Quimby's prior misdemeanor conviction for simple assault (minus the details) was resurrected from the dead when he denied he had ever "abused" his daughter in any form. Admission of the details, however, was inappropriate and requires reversal.

B. The Hearsay Testimony of Edna Drake
During both its case-in-chief and its case-in-rebuttal, and over the vigorous objection of Quimby's lawyer, the State produced police detective Edna Drake who testified extensively and graphically on each occasion as to statements made to her by the child describing the various ways her father had abused her during the incident in 1988 as well as during the prior episode in August of 1986.
Each of these statements is garden variety hearsay. In this posture, the admissibility of today's hearsay turns upon whether or not it was admissible as an exception to the hearsay rule.
Our hearsay rule, M.R.E. 802, states in no uncertain terms that "[h]earsay is not admissible except as provided by law." The prohibition is loud and clear. "Hearsay is incompetent evidence." Murphy v. State, 453 So.2d 1290, 1294 (Miss. 1984).
M.R.E. 803 [Hearsay Exceptions; Availability of Declarant Immaterial] provides us with a laundry list of hearsay exceptions which are not excluded by the hearsay rule even though the declarant is available as a witness. Since the victim testified as a witness, the admissibility of the hearsay statements describing the abuse in 1988 for which Quimby was on trial was governed by Rule 803.
Although we do not finally decide these issues, it does not appear that any of the child's statements to Edna Drake fall within the scope and contours of M.R.E. 803(1) [Present Sense Impression], 803(2) [Excited Utterance], 803(3) [Then Existing Mental, Emotional, or Physical Condition], or 803(4) [Statements for Purposes of Medical Diagnosis or Treatment]. "A child victim's hearsay could be admissible under M.R.E. 803(24) if the prerequisites for this rule are satisfied." In the Interest of C.B., 574 So.2d 1369, 1373 (Miss. 1990).
*747 The five (5) requirements for admissibility under the residual or "catch-all" exception found in Rule 803(24) are: (1) trustworthiness; (2) materiality; (3) probative value; (4) the interests of justice, and (5) notice. Findings must be made on the record. Assuming but not deciding that today's hearsay met each of these five (5) requirements, Drake's testimony divulging to the fact finder the child's description of the recent acts of molestation in 1988 was inadmissible because the trial judge failed to make findings on the record required by 803(24). In the Interest of C.B., supra, 574 So.2d 1369 (Miss. 1990); Cummins v. State, 515 So.2d 869 (Miss. 1987).
M.R.E. 804 [Hearsay Exceptions; Declarant Unavailable] furnishes a shorter but similar list of hearsay exceptions potentially available when the declarant is not available. Drake's hearsay testimony divulging the child's description to her of substantially similar acts of abuse committed in 1986 was also inadmissible because the trial judge, once again, failed to make findings on the record required by the residual or "catch-all" exception found in M.R.E. 804(b)(5).
The State acknowledges that 804(b)(5) is an analogue to 803(24). Rule 804(b)(5) is identical to Rule 803(24) in both language and intent. 804(b)(5) is implicated in this case because of the definition of unavailability contained in 804(a)(3) which states, inter alia, that: "`Unavailability as a witness' includes situations in which the declarant: * * * (3) Testifies to a lack of memory of the subject matter of his statement; * * *"
His daughter testified during direct examination she did not remember the acts of abuse in 1986, but she remembered talking to the police at that time about her father. The State argued below and contends on appeal that the child was unavailable as a witness by virtue of the definition of unavailability contained in 804(a)(3). This argument has some appeal since the child, at least with respect to the prior abuse in 1986, testified to a lack of memory of the subject matter.
Nevertheless, the fact that the child could not remember the earlier incident doesn't change the admissibility of this hearsay. The problem is that a finding of unavailability should be specifically made by the trial judge and placed on the record. Regrettably, such was not done in this case. This Court declines to make a determination of unavailability because it is our duty to review findings and not to make them. Accordingly, we will leave to the trial judge the task of determining the question of unavailability as well as whether or not the hearsay in question is admissible as an exception under 804(b)(5).
The State argues that because 804(b)(5) was shown to the court and purportedly read by the circuit judge, it is apparent the court found the proffered testimony admissible under the rule in question. We decline the State's invitation to find explicit that which, at best, is merely implicit. A trial court is entitled to a considerable measure of judicial discretion in deciding whether or not to admit hearsay evidence under either 803(24) or 804(b)(5), and a determination of admissibility will not be overturned on appeal absent an abuse of that discretion. These observations, however, presuppose the presence of findings made on the record.
We, likewise, reject the State's invitation to remand this case under our Rule 14(b) solely for the limited purpose of making the appropriate findings a matter of record. We must reverse and remand for a new trial with directions to the trial court on remand to determine whether the hearsay statements testified to by Edna Drake, both during the State's case-in-chief and during its case-in-rebuttal, are admissible hearsay.
The trial judge should utilize the guidelines issued by this Court in the recent case of Griffith v. State, 584 So.2d 383 (Miss. 1991), a case involving felonious sexual and digital penetration. Additional guidance for the trial judge to use in determining whether or not out-of-court statements made by a victim of child sexual abuse should be admitted into evidence is found in In the Interest of C.B., supra.
*748 Prior to March 27, 1991, there was no hearsay exception under M.R.E. 803 which specifically encompassed the tender years exception to the hearsay rule. On March 27, 1991, a 25th exception was added to Rule 803. M.R.E. 803(25) states that "[a] statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act." This amendment, of course, was not available on April 4, 1989, the date of Quimby's trial. On remand, once the trial court determines whether or not the child is unavailable to testify, the court should determine whether the hearsay statements made by the child to Edna Drake are admissible under 803(25). Griffith v. State, supra.
Finally, the lower court should examine the child's statements to Edna Drake in light of Rule 804(a)(6), another recent addition to our rules of evidence. By virtue of 804(a)(6) a declarant is unavailable if "(6) [i]n the case of a child, [there is] the substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused." Griffith v. State, supra.
We are fully aware this Court, as a court of review, sits far removed from the playing field and the heat of the battle. We are, likewise, aware that jurors are often unpredictable in their evaluation of evidence. Nevertheless, from our vantage point we are left with the impression that resort to the questionable testimony elicited here was unnecessary. This cause is reversed and remanded.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON and BANKS, JJ., concur.
PITTMAN, J., concurs as to the second issue only.
McRAE, J., dissents without separate written opinion.
NOTES
[1] The jury was never actually instructed that Drake's testimony was admitted only for the purpose of impeaching the defendant's credibility as a witness in his own behalf.
[2] One cannot ignore the graphic details of the prior abuse in 1986 which the district attorney placed before the jury during his cross-examination.