759 So.2d 1183 (2000)
J.L.W.W. and M.F.W.
v.
CLARKE COUNTY DEPARTMENT OF HUMAN SERVICES, by Clayton R. BARNETT, Social Services Regional Director, and M.S.W., C.L.W., J.L.W., and B.S.W., minors, By and Through their next friend, Clayton R. Barnett.
No. 98-CT-00087-SCT.
Supreme Court of Mississippi.
April 20, 2000.
*1184 James N. Potuk, Quitman, Leslie C. Gates, Meridian, Attorneys for Appellants.
Office of the Attorney General by Bridgette Elaine Williams, Attorney for Appellees.
EN BANC.

ON WRIT OF CERTIORARI
MILLS, Justice, for the Court:
¶ 1. This appeal presents a question of how the rights of parents under the Confrontation Clause in a termination of parental rights case should be balanced against the protection of the emotional and psychological well-being of their children. The Court of Appeals found that the Clarke County Department of Human Services did not meet its burden in attempting to have admitted certain statements under M.R.E. 803(25), the tender years hearsay exception, and that the parents were entitled to a new trial. We granted certiorari to consider the question, and we find that the judgment of the Court of Appeals should be affirmed.

I.
¶ 2. This Court adopts the statement of facts as provided in the Court of Appeals opinion as follows:
J.L.W.W. and M.F.W. are the natural parents of four minor children, namely M.S.W., born August 5, 1987, C.L.W., born August 12, 1989, J.L.W., born May 29, 1991, and B.S.W., born October 11, 1992. After notification of allegations of sexual abuse of J.L.W.W. and M.F.W.'s daughter, who at the time was five, and two sons, who were at the time ages three and one, the Clarke County Department of Human Services investigated and obtained custody of the children on May 14, 1992. When the fourth child was born, D.H.S. gained custody of that child on October 14, 1992, based on the adjudications of the other three children as abused. All four children remained in the custody of D.H.S. while it pursued an action to terminate the parental rights and free the children for adoption. Trial on the merits was conducted on February 9, 1995, and March 21 and 22, 1995 in the Chancery Court of Clarke County. The chancellor found clear and convincing evidence that both parents should have their parental rights terminated. As grounds for termination, the chancellor found the parents were responsible for a series of abusive acts concerning one or more of the children, and that an erosion of the parent-child relations had occurred between the minor children and their parents. Aggrieved, J.L.W.W. and M.F.W. appealed. The parents argued, among other things, that the chancellor erred in admitting certain statements under the tender years exception to the hearsay rule. The relevant hearsay statements were made by the children to a social worker, Lori Woodruff, who testified as an expert at trial. At that original trial, the attorney for D.H.S. questioned Woodruff about her initial interview with the young girl. The attorney asked Woodruff to relate the specific statements made by the child during the interview. The attorney for the father objected on the grounds of hearsay. After a discussion as to whether the statements were admissible under the business *1185 records exception to the hearsay rule, the chancellor allowed the statements under the tender years exception. In her ruling, the chancellor stated:
Well, this witness is an expert, and I will make an exception on her interviews with these children. And, also, there is a section under Rule 803(25) which specifically deals with statements made from a child describing any act performed with or on the child is admissible if the Court finds, in a hearing, outside the presence of the jury, which we don't have here, the time, and circumstances of the statements made to determine if there is sufficient indicia of reliability. This witness has described her training to interview children in this manner, and I believe her testimony as to the way this interview has been conducted goes along the lines of this section, so I would allow her to testify.
The attorney for the father responded to the chancellor's ruling, pointing out that the rule requires not only a finding of sufficient reliability, but that the witness either testify or be unavailable to testify. To support his position that the children were not unavailable, the father's attorney read rule 804(a) into the record which addresses unavailability. The attorney for D.H.S. then argued that the children were unavailable under 804(a)(6) which states that "unavailability as a witness" in the case of a child, means that there is the "substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused." Her argument follows:
We would make the argument that the children, both of theall of the children in this case are unavailable under 804(a)(6). It has been thoroughly explored by the Guardian Ad Litem, and if he has any further questions regarding what happened to these children, it will be traumatic to them. Even some of the therapists that the children have seen, made that recommendation to the Department. And if the court would, you know, have a problem with that, or require some sort of hearing on that, I do have Dr. Paul Davey who is prepared to testify, later on, regarding other issues in this matter, shed some light on this matter for the court.
The chancellor then allowed the testimony.
The issue of the children's unavailability also came up after the original trial in the parents' motion to amend the judgment or grant a new trial. In the chancellor's ruling, she discussed the ages of the children and reiterated her finding that the children would not be able to offer any probative evidence of abuse that happened three years prior.
The original appeal in this case was deflected to this court for disposition. Judge Southwick, writing for the majority of this court, authored an unpublished opinion handed down on June 17, 1997. J.L.W.W. v. Clarke County D.H.S., 95-CA-01140[, 697 So.2d 1193] (Miss.Ct. App.1997). Although unpublished and generally not quotable, the original opinion is the controlling law for this case, and we must quote the pertinent part relative to the chancellor's duties on remand:
We find that the chancellor did not apply the proper legal standard in determining that the children were unavailable to testify under the tender years exception to the hearsay rule. We reverse and remand for specific findings. On the remaining issues, we find no error and affirm.
. . .
In Griffith v. State, the Court reversed a conviction of felonious sexual penetration and remanded for a new trial where hearsay statements were admitted under the excited utterance exception to the hearsay rule. Griffith v. State, 584 So.2d 383, 386 (Miss. 1991). In giving guidance to the lower court as to what it should do on *1186 remand, the court stated that unavailability under Rule 804(a)(6) should be read in conjunction with Rule 617 which allows a child sexual abuse victim to testify by way of closed-circuit television upon a finding by the court that "there is a substantial likelihood that the child will suffer traumatic emotional or mental distress if compelled to testify in open court and, in the case of criminal prosecution, if compelled to testify in the presence of the accused." Griffith, 584 So.2d at 387. The court held that the availability of a child to testify is not measured solely in terms of trauma stemming from his physical presence but refers to the child's ability to communicate in a trial setting. Id. at 388.
The Court in Griffith relied on the United States Supreme Court case of Maryland v. Craig, which held that the trial court must find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant, and the emotional distress that would be suffered by the child witness must be more than mere nervousness or a reluctance to testify. Griffith, 584 So.2d at 387, citing Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666 (1990).
In Quimby v. State, the Mississippi Supreme Court reversed a father's conviction of sexual battery of his five year old daughter and remanded for a new trial because the court allowed hearsay statements under the "catchall" exception to the hearsay rule without an on the record finding of unavailability. Quimby v. State, 604 So.2d 741, 747 (Miss.1992). The Court stated that on remand, the court should use the guidelines set forth in Griffith v. State in allowing statements made by children in child abuse cases. Quimby, 604 So.2d at 747. The Court pointed out that at the time Quimby was decided, the trial court did not have the benefit of the tender years exception to the hearsay rule, and that on remand, the court, after determining whether the child was unavailable, must then determine whether the statements were admissible under the tender years exception. Id. at 748.
The chancellor in this case based her ruling of unavailability on whether the testimony of the children would be probative on issues in the trial, which is not a determining factor of unavailability for purposes of the tender years exception to the hearsay rule. There are six factors to consider. The final factor of unavailability in the case of a child is the psychological effect testifying in front of the parents would have on the children. M.R.E. 804(a)(6). While the attorney for D.H.S. stated that he had a psychologist prepared to say that testifying would be traumatic for the children, the chancellor did not require such testimony. In her rulings on the issue, the chancellor did not address the issue of whether testifying would be traumatic for the children and whether the trauma would substantially impair the children.
. . .
Because the chancellor did not require that evidence be introduced on the issue of unavailability, reversible error occurred. Consistent with Griffith she must require evidence and determine whether the children would be traumatized by having to testify in front of their parents, that the trauma would be more than mere nervousness, and that there are not other means of testifying that would eliminate that trauma.
We must now determine whether to reverse and remand for a new trial, or reverse and remand for specific findings. Both Griffith and Quimby reversed and remanded for a new trial. However, both were criminal cases with juries sitting as fact finders. We find that a new trial is not necessary *1187 in this case and remand for the chancellor to make specific findings in accordance with this opinion.
If on remand, the chancellor finds that the children were not unavailable under 803(25) or 804(a)(6) as interpreted in Griffith, then she should grant the parents a new trial.
The case was remanded and a hearing conducted on December 18, 1997. Only a single witness was produced and examined at the hearing. Paul A. Davey was called and testified on behalf of D.H.S. Davey was offered as an expert in the field of psychotherapy, professional counseling, and psychometry with special interests in child abuse. Davey had testified in the previous trial and had previously met with the children. It was Davey's opinion that substantial harm would have come to the children if they had testified in the presence of their parents at the original trial.
The attorney for D.H.S. did not question Davey about whether this potential harm would have in any way been relieved or eliminated by alternate means of testifying such as closed-circuit television. The attorney representing the father attempted to question Davey about his opinion offered in another trial regarding these same children testifying by closed-circuit televison. This attempt was cut short by a sustained objection. The attorney for the father then continued to question Davey along these same lines by proffer. This exchange was in pertinent as follows:
Q. (By Mr. Gates) [attorney for father] Do you recall having testified in another court proceeding that the children should be allowed to testify by a closed circuit television?
MS. WILLIAMS [attorney for D.H.S.]: Your Honor, I'm going to strongly object. That has nothing to do with this proceeding. It is not an issue here today and thereit is not an issue before the court. The issue before the court is where it's very limited and specific reasons and it's beyond the scope of the issue today.
THE COURT: Argument on the objection, Mr. Gates?
MR. GATES: It's relevant if he testified that the children should be permitted to testify by closed circuit television.
. . .
MS. WILLIAMS: Your Honor, that was not raised at the trial on this matter. Counsel did not raise that issue at the trial of this matter and it is beyond the scope of this remand. Counsel should, if counsel wanted to address that issue, he should have preserved his right to address it at trial. He failed to do so and we're beyond that now. He waived his right to do it and he didn't thinkhe didn't raise it at trial and he shouldn't be allowed to raise it now.
MR. GATES: Yes. Let me, let me withdraw that and lay a predicate question.
THE COURT: All right. Question's withdrawn.
Q. (By Mr. Gates) Have you previously been a witness in a court proceeding with reference to whether or not these children should be permitted to testify but not in this court?
. . .
MS. WILLIAMS: Your Honor, again, how, I know where counsel is going with this and he's trying to get in testimony one way that he knows he can't get in another way. This is totally irrelevant and I've said it before, counsel failed to raise this issue during the trial of this matter. If he wanted to get into the previous criminal proceedings, he should have raised that issue at trial when the issue of unavailability came up. He failed to do so. He can't do it now.
THE COURT: Mr. Gates?
MR. GATES: I have no idea what she's asking, but I'm simply asking him about another court proceeding involving these children where he testified *1188 about whether or not they should be permitted to testify under the circumstances under which that should be permitted.
THE COURT: All right. When this trial was originally tried before this court, the issue of whether or not these children should testify arose because they were subpoenaed to come to court, there was no request, whatsoever, before the court that the children testified by closed circuit television. The only request before the court was that they be called to the courtroom to testify and therefore, the objection is sustained.
MR. GATES: I'd like to proffer.
THE COURT: On proffer.
(ON PROFFER BY MR. GATES)
Q. (By Mr. Gates) Do you recall having testified in a proceeding in another court about circumstances under which the children should be allowed to testify?
A. I was trying to recall this morning driving here how many times and how many different opinions I have testified in matters involving these children and II couldn't, I couldn't recall, I wasn't exactly sure. I have testified in a small number of cases in different venues regarding these children.
Q. Did you testify in support of the position that they should be permitted to testify by closed circuit T.V.?
A. I testifiedmy recollection is that I testified in different venue and different hearing about the prospect of closed circuit and I'm not sure if I'm remembering this group or not but I believe that the issue at issue was also raised regarding video tape, yes.
Q. Okay. And was your position that they should be permitted to testify either by closed circuit T.V. or video tape?
A. My position was, at that time, that testimony that was, was much more preferable, in my opinion, much more viable than the prospect of the children coming into the courtroom. My testimony at that time was that I believed that they could function in a closed circuit setting provided that some consideration given to their, their age and their developmental status. For instance, there are things that you can do in a room whether it's a closed circuit camera to, to not draw attention to the camera and to detract from the camera so that the child, you know, toys and animals and other childlike things around, the child doesn't necessarily focus their attention as it is necessarily drawn to the camera and I believe that they could be able to function in that circumstance. However, as I said that was at another hearing.
MR. GATES: That will conclude my proffer on that, Your Honor.
THE COURT: All right. Would the attorneys approach the bench, please. (Off the record)
THE COURT: Let me just make a preliminary statement and you can make whatever statements you want toany attorney. The court called the attorneys to the bench to examine a portion of the Court of Appeals opinion with regard to the Griffith Case. This court has been directed to determine whether or not the children were available to testify. And the specific portion of the opinion which the court is reviewing isstates as follows: "consistent with Griffith, she must require evidence and determined whether the children would be traumatized by having to testify in front of their parents. That the trauma would be more than mere nervousness and there are not other means of testifying that would eliminate that trauma". The court ruled on the objection and Mr. Gates proceeded with the proffer, based on the court's ruling. And the reason for the court's ruling was because the closed circuit testimony issue never came before the court when *1189 this case was originally tried; however, this court is concerned that I do not want to make a type of error by not following the directions for the Court of Appeals that [would] required this hearing to be held again. So out of an abundance of caution, I brought this to the attention of the attorneys. Ms. Williams, I believe you wish to address this issue for the record.
MS. WILLIAMS: Yes, Your Honor. Counsel, the court is certainly correct in the portion of the Court of Appeals opinion that it just read; however, I would stress to the court that the court should focus its attention on the beginning of that sentence which states, "consistent with Griffith" and I would represent to the court that in Griffith, at the time of the trial on the merit[s], rule and I believe it's 617, the closed circuit, theyeah, 617, the rule that addresses closed circuit television. At the time of the trial on the merit[s] in Griffith, that rule was not on the books. It did not exist at the time of the trial on the merit[s]; therefore, when the Supreme Court remanded it, it directed the court to allow the attorneys to look at Rule 617 on remand. I would point out to the court that Griffith goes on to say that the issue of unavailability should be determined on a case by case basis. And I would state to the court that at the time of this trial on the merits, Rule 617 was on the books. Counsel had every opportunity at the trial of the merits to raise that issue and he failed to do so. And I would state to the court that his failure to do so was a waiver of that issue and should not be addressed on this remand. To allow counsel to address that issue now on remand, would be totally inconsistent with Griffith. And I would ask that the court not allow this line of question.
THE COURT: Mr. Gates?
MR. GATES: Your Honor, I respectfully disagree with counsel and I think the prudent course that the court take would be to consider this testimony that was just given by way of proffer and I mean, it's up to the court to determine whether or not I, on behalf of my client, waived the right to have the children examined by closed circuit television. But my statement to the court, I don't feel that I waived that. Under the circumstances of this particular case, I don't think, I know I wasn't intending to waive anything, if I did. But my position is that they should be called and I don't care if they get up here in front of the court or if they do it by closed circuit T.V., but I think they should be witnesses in this case. The point that's at stake here is my client's rights to confront witnesses against him and I think the Mississippi Supreme Court has said that this is fundamental and we're going to protect this right as much as we can, consistent with protecting the children. And I think their basic overall position is that we're going to honor this right as much as we can under the circumstances that exist. And I would submit to the court that the better procedure would be to allow these children to be witnesses by closed circuit television. And then at that time, all the problems, any problem that would have existed, would there would be no problem.
. . .
MS. WILLIAMS: Your Honor, it wasn't raised, it wasn't raised at the trial. It was not raised in his brief in support of his appeal. Not at all. Rule 617 was not addressed not one single time. He didn't evenit's evidence by the fact that he subpoenaed the children. Not one single time [sic] subpoenaed the children at the time of trial. Not one single time rule 617 or closed circuit T.V. ever mentioned in the trial of the merits. And Iwhether he intended to do that or did not intend to do that, he did not do it and that can't be changed. And *1190 to allow him to do it now would be contrary to the interest of justice and totally inconsistent with the Griffith Case....
THE COURT: The court has reviewed the portion of Griffith vs. State which is referred to in the Court of Appeals opinion and has also reviewed Rule 617. The court is satisfied that the court did make the correct ruling with regard to the evidence that was presented on proffer. Due to the fact that there was never a request before this court on the original trial of this civil action for the children to testify by closed circuit television, this court does find that it did make the correct ruling. Please continue.
. . .
MS. WILLIAMS: Your Honor, I just had a couple of questions
. . .
THE COURT: All right. So we're still on proffer then. Please continue, Ms. Williams.
(CROSS-EXAMINATION ON PROFFER BY MS. WILLIAMS)
Q. (By Ms. Williams) Mr. Davey, in the criminal proceeding that was just addressed on proffer, that was a totally different matter than what is before this court today; is that correct?
A. In fact, I've beenI've tried to be careful with my, in my answers this afternoon in terms of saying as couching things in terms of those previously outlined or as previously stated in my testimony. What I was asked about in this matter, the questions that I've been asked have been related to whether or not the children could come into the courtroom with their parents present and in my opinion, in all probability, would they be able to function and be a party, a part of the legal proceedings and would they be able to function as witnesses. And that was theI was attempting to limit my testimony to those particular matters because that's what was addressed in the prior hearing in this case.
Q. Okay. And that was a different issue from that criminal proceeding, was it not? Let me rephrase. In the criminal proceeding, was the sole issue closed caption, excuse me, closed circuit television? Do you recall?
A. I don't immediately recall to tell you the truth. I've testified in this, in matters involving these children several times up to today and I don't immediately recall what it was, but I don't recall being asked any questions about closed circuit television or video taping in this matter.
Q. Let me just wrap it up, Mr. Davey, `cause I realize that was some time ago. But do you recall whether or not, in the criminal proceeding, the issue of closed circuit televisionwas that at your recommendation?
A. I remember being asked, Ino. I remember being asked some questions about that and responding to those in that other matter.
Q. But, you did not recommend that the children be allowed to testify that way, did you?
A. That wasn't my idea. I was asked questions about the viability of testimony by closed circuit T.V.
MS. WILLIAMS: No further cross on proffer, Your Honor.
The chancellor issued her order and opinion on the same day as the hearing. Her opinion reads in pertinent part as follows:
THE COURT: This matter is on remand from the Court of Appeals for this court to make findings of fact with regard to a specific issue, and that specific issue is whether or not two minor children, [excluded to preserve privacy], were available to testify in the trial that was conducted in this courtroom in February and March of 1995.
. . .

*1191 When the two minor children were subpoenaed to testify this court did not allow them to testify and the Court of Appeals found that this court committed reversible error when it did not require evidence to be introduced on the issue of unavailability. That hearing has been held today. The issue is whether or not the children were available to testify at the trial previously, not whether they should be available if they were required to come to court today.
Paul Davey has very clearly testified before this court that the minor children, [excluded] would suffer emotional and psychological trauma if they were forced to testify. He felt that they would come to harm if they were required to testify in the presence of their parents under the circumstances which were given to him which was the trial of this civil action in February and March of 1995.
. . .
Based on the foregoing findings the court is satisfied that [excluded] would have been traumatized by having to testify at the trial which was held in February and March of 1995 and that that trauma would have been more than mere nervousness and that they would have had difficulty in communicating any information to this court. An issue came up during the hearing with regard to a particular ruling of this court as to the use of closed circuit television or video tape in providing the testimony of the children for the consideration of the court and to satisfy the confrontation rights of the defendants and the court is satisfied that due to the fact that that issue was not before this court at the original trial, that is not something that the Court of Appeals is requiring that the court consider at this time.
Rule 617 does require that a motion be filed and a hearing be held on whether or not closed circuit television could be used to show a child's testimony and that issue never came up before the court in the original trial and should the Appellate Court have found that that was something that this court should consider that direction should have been included in the remand and the court is satisfied that that is not an issue that the Appellate Court required this court to consider for the limited purposes of this hearing.
This court does find that the children were not available under 803(25) or 804(a)(6) as interpreted in Griffith and therefore the parents are not entitled to a new trial of this civil action.
J.L.W.W. v. Clarke County Dept. of Human Servs., No. 98-CA-00087-COA (Miss. Ct.App. July 20, 1999), ¶ 3-11.
¶ 3. J.L.W.W. and M.F.W. appealed once again. The case was assigned to the Court of Appeals. By a vote of 8-1, with one not participating, the Court of Appeals reversed and remanded for a new trial. The Court of Appeals found that it had remanded the case so that evidence could be introduced on unavailability, specifically under a three-part test; that the Clarke County D.H.S. had the burden of showing that the children were unavailable under M.R.E. 803(25); that D.H.S. met its burden of showing (1) that the children would be traumatized by testifying the in presence of their parents, and (2) that this trauma would be more than mere nervousness, but that D.H.S. failed to offer any evidence on the third part of the test, (3) that there was no reasonable alternative means of testifying, such as closed-circuit television or videotape deposition, that would eliminate the trauma. The Court of Appeals found that the D.H.S.'s witness, Paul Davey, a psychotherapist, had testified at the time of a separate criminal matter involving these children that the children could testify via closed-circuit television. The Court of Appeals thus found that since the D.H.S. had not met its burden to show unavailability, the children were available at the time of trial and the *1192 hearsay statements were erroneously found to have been admissible.

II.
¶ 4. The Clarke County D.H.S. first argues that the Court of Appeals' decision is in conflict with Griffith v. State, 584 So.2d 383 (Miss.1991). This question involves the interplay of several different Rules of Evidence. First, M.R.E. 803(25) provides the following hearsay exception:
(25) Tender Years Exception. A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.
¶ 5. The applicable definition of unavailability in this case is defined in M.R.E. 804(a)(6): "In the case of a child, because of the substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused."
¶ 6. M.R.E. 617 states in part:
(a) Upon motion and hearing in camera, the trial court may order that the testimony of a child under the age of sixteen (16) years that an unlawful sexual act, contact, intrusion, penetration or other sexual offense was committed upon him or her be taken outside of the courtroom and shown in the courtroom by means of closed-circuit television upon a finding that there is a substantial likelihood that the child will suffer traumatic emotional or mental distress if compelled to testify in open court and, in the case of a criminal prosecution, if compelled to testify in the presence of the accused.
(b) The motion may be filed by the child, his attorney, parent, legal guardian or guardian ad litem, the prosecuting attorney, or any party to the case. In addition, the court may act upon its own motion.
(c) Upon stipulation of the parties, the court may appoint a person, who is qualified as an expert in the field of child sexual abuse and who has dealt with the child in a therapeutic setting concerning the offense or act, to aid in formulating methods of questioning the child and to assist the court in interpreting the answers of the child.
¶ 7. This Court's interpretation of these various rules was brought together in Griffith v. State, 584 So.2d 383 (Miss.1991). Griffith was convicted for the sexual battery of Sally S., a retarded ten year-old. The State introduced the testimony of Sue Vaughan, one of Sally's teachers, as to what Sally had told her. Vaughan's testimony was admitted at trial as a hearsay exception as either an excited utterance or a then existing mental, emotional or physical condition. On appeal this Court reversed and remanded as there was no foundation presented as to when Sally made the statements. This Court gave the following instructions as to guidelines on remand:
The court must also examine Sally's statements to Sue Vaughan in light of Rule 804(a)(6), a recent adoption by this Court. Rule 804(a)(6) provides that a declarant is unavailable in the following situation:
(6) In the case of a child, because of the substantial likelihood that the emotional or psychological health of the witness would be substantially impaired if the child had to testify in the physical presence of the accused.
Rule 804(a)(6) must be read in conjunction with Rule 617 of the Mississippi Rules of Evidence, another recent enactment. Rule 617 allows a child sexual abuse victim to testify by way of closed-circuit television upon a finding by the *1193 court that "there is a substantial likelihood that the child will suffer traumatic emotional or mental distress if compelled to testify in open court and, in the case of a criminal prosecution, if compelled to testify in the presence of the accused."
The U.S. Supreme Court approved such a procedure in Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). In order to justify using the procedure, the State must make an adequate showing of necessity.
The requisite finding of necessity must of course be a case-specific one: the trial court must hear evidence and determine whether use of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. [Citations omitted]. The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant. [Citations omitted]. Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is the presence of the defendant that causes the trauma. In other words, if the state interest were merely the interest in protecting child witnesses from courtroom trauma generally, denial of face-to-face confrontation would be unnecessary because the child could be permitted to testify in less intimidating surroundings, albeit with the defendant present. Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than de minimus, i.e., more than `mere nervousness or excitement or some reluctance to testify.' [Citations omitted].

Maryland v. Craig, 497 U.S. at 854, 110 S.Ct. at 3169, 111 L.Ed.2d at 686 (1990). The availability of the child to testify is not measured solely in terms of physical presence but refers as well to the child's ability to communicate in a trial setting.
We note that Sally's ability to communicate in court may be jeopardized by her retarded mental condition. Once the court determines that Sally is or is not available to testify, the court should determine whether the statements made by Sally to Sue Vaughan are admissible under 803(25).
Griffith, 584 So.2d at 387-88.
¶ 8. In J.L.W.W. I, the Court of Appeals found that the case should be reversed because the chancellor did not require evidence to be introduced on the unavailability of the children. "Consistent with Griffith she must require evidence and determine whether the children would be traumatized by having to testify in front of their parents, that the trauma would be more than mere nervousness, and that there are not other means of testifying that would eliminate the trauma." J.L.W.W. I at ¶ 8. In J.L.W.W. II, the Court of Appeals found that the Clarke County D.H.S., which bore the burden as the party wishing introduce the testimony in question, had failed to introduce anything on the third step, other means of testifying.
¶ 9. D.H.S. first argues that the Court of Appeals erred in incorporating the procedural requirements of M.R.E. 617 into the unavailability analysis under M.R.E. 804(a)(6), particularly where the Court of Appeals allegedly stated the opposite in its opinion. First, this Court stated in Griffith, 584 So.2d at 387, that "Rule 804(a)(6) must be read in conjunction with Rule 617 of the Mississippi Rules of Evidence." Second, when the Court of Appeals made that pronouncement it was referring to the "procedural requirement" of having someone file a motion before alternative means of taking a child's testimony could be considered. Third, the Court of Appeals promulgated the law of this case in its first decision on this matter. D.H.S. did not object to the decision at the time it was handed down.
¶ 10. D.H.S. continues to argue that the parents in this case filed no motion as *1194 is required under M.R.E. 617. The Court of Appeals found that the question of unavailability was separate and apart from the procedural requirements of M.R.E. 617. The Court of Appeals found the three-step process was D.H.S.'s evidentiary burden. "In providing the predicate for introduction of this hearsay, D.H.S. had to show that closed-circuit television was not an option. The parents did not have to show that it was an option. Consequently, whether the parents filed a motion under Rule 617 had no effect on D.H.S.'s evidentiary burden." J.L.W.W. at ¶ 19. The Court of Appeals further noted that the trial court could invoke M.R.E. 617 on its own motion.
¶ 11. Finally, Clarke County states that this case is different from Griffith in that the issue first arose in this case where the Guardian Ad Litem requested that the children be declared unavailable. Clarke County is not very specific about it, but it appears that action took place in the initial trial, and any objection based on that should have been raised in the first appeal on this matter. This issue is without merit.

III.
¶ 12. Clarke County D.H.S. next argues that the COA did not adhere to the proper standard of review, which was abuse of discretion, according to Hennington v. State, 702 So.2d 403 (Miss.1997). While a review of the J.L.W.W. opinion does not find those words present, the Court of Appeals found that the D.H.S. had a burden to meet a three-step test, and did not present any evidence on the last step. As a result it found that the circuit court erred in finding that the burden had been met. Where no evidence was presented on this last required step, the Court of Appeals could hardly find that it was within the discretion of the chancery court to rule otherwise. This issue is without merit.

IV.
¶ 13. Clarke County D.H.S. last argues that "the option of closed circuit television was available to the parents at the trial on the merits and failure to raise such did constitute a waiver." Though it is not clear, D.H.S. seems to base this argument on actions taken, or not taken, by the parties at the original termination hearing, such as the guardian ad litem claiming that the children were unavailable. D.H.S. also continues to argue that the parents have waived any argument as to other options for testifying, such as closed circuit television, by not raising this at the original trial. The Court of Appeals made its initial decision in this case in 1997. It remanded the matter for consideration of whether D.H.S. could meets its burden as far as the three-part test on unavailability. Clarke County did not attempt to have the 1997 decision reviewed. All that was before the Court of Appeals in the second appeal was whether D.H.S. had meet its burden on unavailability, and the Court of Appeals found that it had not. This issue is without merit. The judgment of the Court of Appeals is affirmed.
¶ 14. AFFIRMED.
PITTMAN AND BANKS, P.JJ., McRAE AND WALLER, JJ., CONCUR. SMITH, J. DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PRATHER, C.J. COBB, J., JOINS IN PART. DIAZ, J., NOT PARTICIPATING.
SMITH, Justice, Dissenting:
¶ 15. In my view this case involves a fundamental issue of broad public importance due to the finding by the youth court prior to the first termination of parental rights proceedings before the chancellor that these minor children were sexually abused.
¶ 16. Additionally, the issue of declaring the children unavailable first arose in the initial case ultimately decided by the Court of Appeals. The children's guardian ad litem insisted upon the procedure because, as he opined, to testify in the presence of the parents would have been traumatic for the children. It is noteworthy that the *1195 parents had subpoenaed the children to testify. The parents' motion to amend judgment or grant a new trial also discussed the children's unavailability. But, no one, including the parents, by motion, or otherwise argued Rule 617 or suggested alternatively that closed circuit video testimony be used to record the children's testimony.
¶ 17. Closed circuit video argument arose in the second hearing before the chancellor, perhaps as an afterthought by the parents and their counsel. This viable alternative could have been raised at the first hearing, but no one, including the parents, requested such alternative procedure be utilized by the chancellor. Thus, waiver by the parents clearly applies here. Rule 617 was not available during trial when our case of Griffith v. State, 584 So.2d 383 (Miss.1991), was decided, but was available at trial here. Rule 617 is clearly triggered by the filing of a motion, and may even include on the Court's own motion. See Griffith at 387 (citing Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990)). In Griffith, the State filed a motion to require that the children testify by video. See also Smith v. Jones, 654 So.2d 480, 486 (Miss.1995). No motion triggering Rule 617 was filed in these proceedings. Additionally, to now claim that the psychologist in the youth court proceeding indicated closed circuit video was a viable alternative means of allowing the testimony of the children is not an accurate reflection of the actual recommendation of the psychologist. He clearly indicated that closed circuit video in this case was an alternative, it was not his recommendation.
¶ 18. I also note that the Court of Appeals failed to adhere to the proper legal standard that this Court has always required. This Court has mandated that when reversing the lower court, a finding that the trial judge abused his discretion is the proper legal standard required. Hennington v. State, 702 So.2d 403, 415 (Miss. 1997). See also Smith v. Jones, 654 So.2d 480, 486 (Miss.1995). The Court of Appeals majority wholly failed to enter such a finding that the chancellor abused her discretion in the case at bar.
¶ 19. I would adopt the dissenting view so ably expressed by Judge Payne in both of the Court of Appeals decisions regarding the case at bar. The chancellor had sufficient evidence from parties, experts, and statements attributed to the children as to the identity of the sexual perpetrators, and the chancellor concluded that the best interest of the children was served by terminating parental rights. To now require a new trial which will occur some seven to eight years after the original finding that the children suffered sexual abuse at the hands of their parents will only further traumatize these children who have obviously struggled to overcome this dark and traumatic event in their young lives.
¶ 20. I respectfully dissent.
PRATHER, C.J., JOINS THIS OPINION. COBB, J., JOINS IN PART.